# Unangst's Appeal.

1. A railroad company claimed a right to construct their road without first making compensation or giving security to the landowner, alleging that he had given them license to do so, provided they would "go on the west side of his house—against the hill side and high enough to save his water-power." The height of the grade is a condition of the right to enter and construct.

2. The burden was on the company to show what was the estimated height and that the height in fact did no injury to the water-power.

3. The fact that the company located their road on the route designated by the landowner was not a waiver of his right to compensation or security before entering on his land, without performing the condition as to grade.

4. Destruction of the water-power was not a consequence of construction upon a designated route, but of construction in violation of a designated grade.

5. Where a railroad company, alleging a waiver, asks to divest a citizen of rights guarded by the Constitution, they should come into court, if not with a writing, with full, distinct and unequivocal proof of the waiver they allege.

6. A corporation obtaining a concession to enter on condition of refraining from a particular injury in its nature irreparable and not readily estimated in damages, forfeits its license when it violates the condition, and should be restrained till it does equity.

7. Pusey *v.* Wright, 7 Casey 387, analyzed.

March 21st 1867.  Before WOODWARD, C. J., THOMPSON, STRONG and AGNEW, JJ.  READ, J., absent.

Appeal by Joseph Unangst from the decree of the Court of Common Pleas of *Northampton county.*  In equity.

On the 4th of December 1863, Joseph Unangst filed a bill against The Bethlehem Railroad Company, Samuel C. Shimer, Charles Brodhead and William Hentzleman, officers and agents of the company.

The bill set out that the plaintiff owned a tract of land in Bethlehem and Hanover townships, Northampton county, on which were erected a grist-mill, several dwelling-houses, barns, &c.; that The Bethlehem Railroad Company, incorporated by Act of Assembly of May 1st 1861, were authorized to construct a railroad from the junction of the Lehigh Valley and North Pennsylvania Railroad, opposite Bethlehem, to the borough of Bath, all in Northampton county, that about the 23d of October then last past, the plaintiff was informed that the company by its engineers, workmen, &c., had entered upon his above-mentioned land, and were proceeding to lay out, grade and construct a railroad through it, and were then digging his ground, cutting his trees, &c., and doing his property serious injury;—that thereupon he served on them a notice, setting forth, that no compensation had been made for taking his property agreeably to the constitution, and that the company and those acting under them were trespassers, and requiring them to leave the premises and make compensation for the damage already done.  The bill further charged that the company, by its engineers, &c., notwithstanding the notice, had entered upon his land, and were proceeding to lay out and construct their railroad across it without authority of law; that they had not compensated him nor given security for compensation; that he had never consented to such entry or use; and that these acts, if persisted in, would do him great and essential injury; and prayed for an injunction to restrain the defendants from proceeding further, and for other relief, &c.

On the 18th of December 1863, the defendants filed an answer denying that the company had entered upon the described premises of the complainant to make a railroad without authority of law or without the consent of the complainant, but that they did enter upon said tract, and are proceeding to make a railroad through and across the same, and have nearly completed said road on complainants' land near Bethlehem, by virtue of the Act of May 1st 1861, " and also by the express consent and permission of the complainant given, and in pursuance of a parol contract made and entered into by and between the complainant and Charles Brodhead, one of the defendants, then the president of said Bethlehem Railroad Company, and acting as its agent, &c.,

5 P. F. SMITH—9

[Unangst's Appeal.]                •

before the entry and user of the said lands of complainant as charged in his bill; whereby the complainant expressed a great desire that the Bethlehem Railroad should be built, and declared that if it was built, he would erect a large grist-mill and distillery on said lands, and upon being shown by the said Charles Brodhead the chart of the said railroad, exhibiting the location and route thereof as described thereon (the line of which on the said lands of the said complainant near Bethlehem was as then surveyed over the low-lands near the creek and mill), the complainant proposed to the said Charles Brodhead, that if the company " would change the location of said railroad on said complainant's said lands near Bethlehem, and would build and construct said railroad, that he would give the land for nothing to said company;" and that the said company might enter and construct the same, provided that they would construct the said railroad, on the west side of the brick house near Bethlehem against the hillside, and high enough to save his water-power, which he estimated at eight feet above low-water mark, which proposition and provisions of said complainant the said Charles Brodhead accepted for the said company, and agreed to locate and construct the said railroad on the route and in the manner proposed by the said complainant.   That the said company, in accordance with said agreement, have located the said railroad on the part of said complainant's land on the west side of the brick house and against the hillside and have commenced building and constructing the same (the grading of which is now finished and completed) high enough to save complainant's water-power, and intend to finish and complete the entire work on said part of said complainant's land, high enough, viz. eight feet above low-water mark, so as not to injure his said water-power.   Which said change of location of the said railroad, and the change in the mode of constructing the same on said part of said complainant's land, in pursuance of said agreement was, is, and will be attended with greater expense, &c., to the said company, than if the said railroad had been located and constructed in such manner and in such parts of said complainant's land as before contemplated and designated on the chart of said railroad, when the same was exhibited to the said complainant, at the time of the making of the agreement aforesaid.   That the said company sometime in the month of September last past, and after the making of the said agreement, commenced building and constructing said railroad on said complainant's land near Bethlehem, and worked thereon for several weeks with the full knowledge of said complainant, without any objection or hindrance on his part, until the service of the said notice on the 28th day of October last past."

The answer further averred that by reason of the before-mentioned agreement, the defendants were not bound to compensate

the complainant or to give him security, and that the complainant had been fully compensated by the provisions of the agreement. The answer, admitting that the company had proceeded to make the road in accordance with agreement, denied that they were injuring the complainant's property more than was actually necessary in the construction of the road.

The complainant filed a replication, and the matter was referred to Elisha Allis, Esq., as examiner and master.

There was evidence before the examiner, that the road as it was then located would destroy a new mill-site and water-power, unless the complainant submerged the road, which at one point would be six feet; that the land was bought to secure the mill-site; that the complainant had made preparations to build on the new site before the work was commenced on the road, having purchased a mill-shaft and quarried a large quantity of stone; that the president of the company was frequently told that the grade was too low. There was evidence also of cutting trees, taking down fences, digging, &c., by persons engaged in making the road, and of there being a large mill and other valuable buildings on the premises.

The defendants called George F. Herman, who in his *voir dire* testified that he had been a stockholder, but a few days previously had assigned his shares to his wife at the request of Brodhead, who said it was necessary for him to do so to be a witness, that he got nothing for assigning them, and that he gave it to his wife, nothing being said about her giving it back to him.

Defendants also called Samuel Straub, who on his *voir dire* testified that he had been a shareholder in the company, and had disposed of his stock a few days before to his son, without being paid or promised to be paid anything for it, that "he just gave it," that the object was to enable him to be a witness, that it was not understood that it was to be retransferred after he had testified; that Brodhead requested him to make the transfer, telling him that it was necessary. The witnesses were severally objected to by the complainants on the ground of interest, but were admitted by the master.

Herman testified: "I was present in August 1863, at a conversation between Charles Brodhead, president of Bethlehem Railroad Company, and Joseph Unangst. When I came there they were talking about the running of the line of the railroad. The words he said were 'I say in the presence of these men if you go down there, that is at the mill in Bethlehem, on the other side of the brick house, west side, and do my house no harm, and go along on the west side, and on this side do my water-power no damage, then go on; I have quarried stones for a mill and still-house, and if you stay up here on the west side between me and Kemmerer and just go on and make the railway I will ask after no-

[Unangst's Appeal.]

thing.' I have seen the place where the railroad is made since. They have made the railroad where Unangst meant it, on the west side of the brick house. The road is near Kemmerer's line. In some places it is on the line between Unangst and Kemmerer. It does not touch his water-power."

On cross-examination he said amongst other things: " After the conversation was over and the bargain done, Brodhead came after me and stopped me. He asked me, have you noticed the words that this man spoke ? I said yes. I was away a little distance, several rods, not one hundred, when he called me to stop. He said nothing more that I remember."

Straub testified: " I was present at a conversation between Unangst and Brodhead in the summer of 1863. Brodhead and I went to Unangst's house; Brodhead presented the draft or map showing the route of the railroad, and the place it was to run past his mill property. Mr. Unangst did not appear to be satisfied. They were talking about changes that could be made. Mr. Unangst then told Mr. Brodhead that if he could change it to bring the road high enough not to interfere with his water-power, they should just go on with the road. Brodhead wanted to know about the charges or damages for the road. As near as I can tell, Mr. Unangst told him if he stayed up high enough he would not charge much or anything. I do not now recollect which. I don't remember that Unangst said which side of the brick house the road should run. The first line I think was east of the brick house. I don't precisely recollect the words of Mr. Unangst, whether he said he would charge not much or anything. He said the company should go on with their road. I don't remember that he said where they had pointed it out. I think he said if they stayed high enough. I have seen the railroad since where it was partly graded from the brick house to the dam. I think it was located where Unangst and Brodhead agreed, from the brick house up to the dam. I don't know anything about it lower down."

On cross-examination he said: " All Unangst said was, that they should stay high enough not to injure his water-power. I considered that to be the agreement."

In his report the master, amongst other things, said : " Was there such contract or consent" (as alleged in the answer).

" It must be kept in mind that we are not now adjudicating the amount of damages to which Mr. Unangst is entitled ; nor whether he is entitled to any. The gist of the complaint is wrongful entry and trespass ; that of the answer that the entry was by permission and consent of the complainant, and in pursuance of a contract for change of route, which caused the company much additional expense.

" The entire contract for change of route, as set out in the answer, was not proved, and the case then turns upon the ques-

[Unangst's Appeal.]

tion of consent on the part of the complainant to the entry for construction of the railroad. Upon the evidence the master is compelled to decide that such consent was given, and the injury done or not to be done to his water-power, the test made by him as to the amount of damage to be claimed. If there was consent, then the entry was not wrongful, but permissive for the purpose of constructing a railroad requiring the commission of the very trespasses complained of.

"But, say complainant's counsel, consent was only given provided defendants kept up high enough so as not to injure the water-power, then his contract not to 'charge much or anything' is broken, and he can come upon the company for all the damage he can prove, a large element in which will be the injury to the water-power if it is injured.

"But suppose that the company did not locate their road high enough. Did Mr. Unangst make the agreement with the understanding that if this were not done he could then turn the company out of possession, and stop their proceedings until they had made compensation, or given security according to law? He does not seem to have had this idea.

"It is urged, however, that a landowner is not remediless against any wrong or injury that may be done him, because of his consent to entry upon his lands for railroad construction.

"Certainly not if there be a plain and palpable violation of the privileges granted. A right given to cross one end of a farm does not justify entry and construction across the middle or the other end. But where the road is laid out and constructed nearly or quite upon the designated route, marked out at the time of consent, as the witnesses Straub and Herman testify, the complainant cannot claim an injunction against the necessary consequences of such construction, or against any work that might be lawfully done, if in the absence of consent or agreement the company had paid the damages, or given security according to law. In that event the company might have taken the route first laid down, or one that would have destroyed the new water-power and mill site altogether. The landowner must be regarded as knowing what a railroad is, and what is necessary for its construction, when he gives his consent to entry upon his lands for that purpose. And after consent given, his remedy seems to be solely under the act providing for the ascertainment of his damages.

\*        \*        \*        \*        \*        \*        \*        \*

"It seems a logical conclusion that a permission to enter is a waiver of the right to claim antecedent compensation or security, and further, that if there be a waiver the landholder must obtain his damages in the manner provided by law, and that such a proceeding is the only one he can pursue, if there be no plain

[Unangst's Appeal.]

violation of the express conditions upon which only such consent was given.

 *  * . *  *  *  *

"It seems, then, that entry by permission is a fair answer to the complainant's claim for compensation or security under the Act of 1849, and the absence of any allegation as to an endeavor to agree with the defendants, a reply to the requirement that the company should have tendered their bond.  * * *

"The decision of the master is, that granting that the remedy by injunction is properly sought in this case, no sufficient case has been made out to justify the master in granting it. In his opinion the ends of justice do not require the interposition of the court."

Exceptions were filed to the master's report, to admitting Herman and Straub to testify, and refusing the injunction. The exceptions were overruled by the court and the bill dismissed.

The plaintiff appealed, and assigned for error the overruling of the exceptions and dismissing the bill.

*P. Ihrie* and *H. D. Maxwell*, for appellants, cited Brightly's Eq. § 295; Jarden v. The Phila., Wil. and Balt. Railroad Co., 3 Whart. 502; Penna. Railroad Co. v. Canal Coms., 9 Harris 22; Commonwealth v. Pitts. and Con. Railroad Co., 12 Id. 160; Bonaparte v. The Camden and Amboy Railroad Co., 1 Bald. 205; Const. of Penna. Art. IX., § 10; Act 19th February 1849, § 10, Purd. 838, pl. 12, Pamph. L. 83; The Barclay Railroad Co. v. Ingham, 12 Casey 194; Pusey v. Wright, 7 Id. 387; Act of March 21st 1772, § 1, Purd. 497, pl. 1, 1 Sm. L. 389; 2 Am. Railroad Cases 481, 743; Utica and Schenectady Railroad Co. v. Brinckerhoff, 21 Wend. 139; East Penna. Railroad Co. v. Heister, 4 Wright 57; McKellip v. McIlhenny, 4 Watts 317; Swartz v. Swartz, 4 Barr 353; Lefevre v. Lefevre, 4 S. & R. 241; Rerick v. Kern, 14 Id. 267; 3 Dan. Ch. P. 1736, 1737; Phila. and West Chester Railroad Co. v. Hickman, 4 Casey 318; Redfield on Railways, p. 44, note 4; Rogers v. Huntingdon Bank, 12 S. & R. 77; Grant v. Mechanics' Bank of Phila., 15 Id. 140; Sewall v. Lancaster Bank, 17 Id. 285; Post v. Avery, 5 W. & S. 509.; Patterson v. Reed, 7 Id. 144; Leiper v. Pierce, 6 Id. 555; Asay v. Hoover, 5 Barr 21; Smith v. Bank of Washington, 5 S. & R. 318; Brightly's Eq. § 24; Adams v. Bench, 7 Leg. Int. 178; Skillton v. Webster, Bright. R. 203; Bank of Ky. v. Schuylkill Bank, 1 Pars. 220; Bank of Va. v. Adams, Id. 534; Kirkpatrick v. McDonald, 1 Jones 387; Brightly's Eq. § 24; Wesley Church v. Moore, 10 Barr 274; Crest v. Jack, 3 Watts 240; Carr v. Wallace, 7 Id. 401; Knouff v. Thompson, 4 Harris 361; 1 Greenl. Ev. § 341; Commonwealth v. Commissioners of

Allegheny, 1 Wright 285; Pitts. and Con. Railroad Co. v. Clarke, 5 Casey 146.

*E. J. Fox*, for appellees, cited Borough of Easton's Appeal, 11 Wright 262; Levering *v.* Phila., Ger. and Nor. Railroad Co., 8 W. & S. 462; 2 Story's Eq. Juris. §§ 863, 896, 911; Act of April 2d 1803, § 2, Purd. 366, pl. 11, 4 Sm. L. 89; Lefevre *v.* Lefevre, 4 S. & R. 245; Rerick *v.* Kern, 14 Id. 271; McKellip *v.* McIlhenny, 4 Watts 322; Swartz *v.* Swartz, 4 Barr 353; Ebner *v.* Stichter, 7 Harris 23; Branson *v.* City of Phila., 11 Wright 331; Campbell *v.* McCoy, 7 Casey 264; Washburn on Real Property 398; 1 Greenl. Ev. § 430; Smith *v.* Bank of Washington, 5 S. & R. 318.

The opinion of the court was delivered, May 13th 1867, by

AGNEW, J.—This is a bill in equity to restrain the defendants from proceeding to construct a railroad upon the farm of the plaintiff. The plaintiff alleges they have entered and are unlawfully constructing their railroad without his consent and without payment of a compensation or giving him security therefor; and that their acts, if persisted in, will do him great and essential injury. The answer of the defendants justifies under an alleged agreement to permit them to enter and construct their railroad, provided they would do so on the west side of the brick house near Bethlehem, against the hillside, and high enough to save his water-power, which the answer alleges he estimated at eight feet above low-water mark; and avers that they accepted this condition, and have proceeded to perform the same, and are constructing the road high enough to save complainant's water-power, to wit, eight feet high above low-water mark. Thus the height of the grade, to avoid injury to the water-power, is an admitted condition of the right to enter and construct, but the height is alleged to have been estimated at a given number of feet.

The defendants called two witnesses to prove the alleged license, both of whom were stockholders who had assigned their stock for the purpose of being witnesses, one to his wife, and the other to his son, a portion of his subscription being yet unpaid. They were objected to, and were of doubtful competency; but it is unnecessary to decide this question. According to the testimony of one, the plaintiff said to Mr. Brodhead, the president of the company, in a conversation about changing the route of the survey, "If you go down there on the other side of the brick house —west side—and do my house no harm, and on this side do my water-power no damage, then go on. I have quarried stone for a mill and still-house, and if you stay up there on the west side between me and Kemmerer, just go on and make the railway. I will ask nothing." The other witness says, "Mr. Unangst then

told Mr. Brodhead that if they would change it (the route) to bring the road high enough not to interfere with his water-power, they should just go on with the road; that if they stayed up high enough he would not charge much or anything." Neither of these witnesses—and they are the only witnesses of the alleged consent—testifies to any estimate being made by the plaintiff of the height of the grade necessary to save his water-power.

The defendants gave no proof whatever that the road was being built high enough to avoid injury to the water-power. The proof of both of these facts, the estimate of height alleged, and that the height in ·fact did no injury, lay on the defendants: Purdy *v.* Wright, 7 Casey 387. Thus both answer and proof concede that the express condition of the right to enter and construct before compensation or security rests on making the grade high enough to avoid injury to the water-power, while no proof of a sufficient height was given by the defendants. But the plaintiff proved expressly by two witnesses, one of whom was an engineer who had levelled the height of the water and of the grade of the road, that the water in the stream could not be dammed up to the water-level of the old dam at the forebay without submerging the railroad from five to six feet.

The master decided the case, on the fact that the railroad was located and being constructed on the west side of the brick house, substantially on the route indicated by the plaintiff in his conversation with Broadhead.

But he does not find the fact, or notice in his argument, that the grade was high enough not to injure or interfere with the plaintiff's water-power. He argues that defendants having a legal right of entry, and the plaintiff having consented to their entry and construction of the road at the place designated by him, he waived his right to compensation or security before entry; and, if entitled to damages at all, he must seek compensation in the mode pointed out by the charter. His argument, however, overlooks the fact that the legal right of entry is subject, by the amended constitution, to the condition of compensation or security before it can be exercised; and that the alleged waiver was made upon a fundamental condition involving this very right of compensation, by preventing the injury which would call most loudly for it. The condition of waiver was of prime importance to the plaintiff.

He saw a line of the road surveyed which would ruin his water-power, and he said to the president, " Change your route and go over there and raise up your road high enough to do my water-power no injury, and I will ask no damages or not much."

The object of his consent was to save his water-power—going over to the hillside was but a means to that end. To ruin his water-power was to do him irreparable and serious injury.

To save it was to render the injury almost inappreciable. It needs no argument to show that to violate this feature of the agreement, was to ignore the fundamental condition that procured his assent to the entry and construction of the road without compensation or security first made.

Yet the master either overlooked, or attached so little importance to this fact, that he did not even mention it. But he concedes the principle in his argument. He says it is urged that the landowner is not remediless because of his consent to an entry on his land for railroad construction. Certainly not (he replies), if there be a plain and palpable violation of the privileges granted ; as a right to cross one end of a farm does not justify entry and construction across the middle. But (he proceeds to say) when the road is laid out and constructed nearly or quite upon the designated route, the complainant cannot claim an injunction against the necessary consequences of such construction. But this is the very mistake. Destruction of the water-power is not the consequence of construction upon the designated route, but of construction in violation of the designated grade, to wit, an elevation sufficient to save the water-power. A deviation from the route he concedes to be a violation of the condition of consent ; but deviation from grade, which is the all-important matter, he seems not to have thought of.

The route was prescribed for the very purpose of raising the grade and of reaching the level necessary to preserve the power. It was the single thought of the plaintiff, and he stated that he hauled the stones and was going to build a new mill and a distillery. In his short conversation he was distinct in his utterance, that if the route was changed to " bring the road high enough not to interfere with his water-power, they should just go on with the road." It then became the duty of the company to examine the designated route to ascertain whether it would suit their purpose, and carry the road up to the required elevation without too much expense. If it did not suit their alignment, or if it would require too great a fill to reach the proper elevation, they need not go on under this license, and had it in their power to enter and construct the line to suit themselves, by giving the security or making the compensation necessary to entitle them to proceed.

It is insisted by the plaintiff that the license was not binding, it being neither expressly accepted nor reduced to writing. It is unnecessary to decide these questions, but they lead to some comments upon the facts. According to the defendants' two witnesses, not a word was said by Brodhead in reply to the plaintiff. He neither said he would accept the terms nor promised to fulfil the condition. The master rests this part of the case wholly upon the subsequent change in the line, and the proceeding to construct on

the indicated route.  But the conduct of Brodhead required notice.  Though he had said nothing in answer to the plaintiff, he followed Herman, the witness who had gone forward, called him to stop and said : " Have you noticed the words this man spoke ?" Herman said yes, and Brodhead said no more.  This evidently looks more like a catching bargain than a fair and open effort to obtain the plaintiff's consent.  The absence of a writing under these circumstances, and of any assurance on the part of Brodhead to observe the condition, does not look well.  When a railroad company asks to divest a citizen of rights sacredly guarded by the constitution, it is the least it can do to come into court, if not with a writing, with full, distinct and unequivocal proof of the waiver it alleges.  The only question remaining is, whether equity will interfere to prevent the injury.  Of this I cannot doubt.  After the construction of the road the plaintiff cannot build up his dam, for this would submerge the road five or six feet, and make it impassable.  He would then have to put up with uncertain damages, and the risk of collection, as well as its difficulties and delays.  He is not bound to yield his undoubted right to previous compensation or good security, and it would be most inequitable to force him into this position.

A corporation obtaining a concession to enter on condition of refraining from a particular injury, in its nature irreparable, and which cannot be readily estimated in damages, forfeits its license when it violates this condition, and should be restrained until it does equity.  It comes under that head of equity power which extends to the prevention or *restraint* of the commission or continuance of acts contrary to law, and prejudicial to the interests of the community, or the rights of individuals.  The act in this instance, if continued to be done, is in its effect upon the rights of the plaintiff of the same nature as waste.  Even a tenant without impeachment of waste will be restrained from doing unnecessary and injurious waste: 3 Daniels Chan. Pr. (1865) pp. 1737–38.

The diversion of streams, obstruction of watercourses, back flowage on mills, pulling down river banks, &c., will be enjoined.

So a corporation abusing its privileges, or encroaching upon rights of possession and property, will be enjoined: 2 Story's Eq. §§ 927, 928, 929.  A partner having a legal power over partnership property will be restrained from using it contrary to equity: Stockdale *v.* Ullery, 1 Wright 486.  See also Commonwealth *v.* Pittsburg and Connelsville Railroad Co., 12 Harris 159; Denny *v.* Brunson, 5 Casey 382; Jarden *v.* P. W. and B. Railroad Co. 3 Whart. 502; Tramson *v.* N. and E. Railway Co., 2 English Railway Cas. 380; Palmer *v.* Graham, 1 Pars. Sel. Cas. 476. Equity powers are to be interpreted liberally: Kirkpatrick *v.* McDonald, 1 Jones 393; Yard *v.* Patten, 1 Harris 282.

[Unangst's Appeal.]

Pusey *v.* Wright, 7 Casey 387, differs from this case in several important particulars. The consent given to enter and construct the road was not founded on a fundamental condition essential to preserve the property from irreparable injury. That part of the case was wholly unsupported in the proof. The case fell down to the alleged neglect to perform certain subsequent stipulations, such as were mere matters of contract, and could be compensated readily. The entry was not only permissive, but the plaintiff permitted the road to proceed to completion without his dissent. In the present case, as soon as the plaintiff discovered that the road was not to be elevated sufficient to secure his water-power, he served a written notice to leave the premises and desist from trespassing, or to give that security which the law requires.

The plaintiff has therefore shown his right to enjoin the defendants from proceeding further until they have given him security for his damages, or that they will raise the road to such an elevation as will save his water-power from injury.

And now, May 13th 1867, this case having been heard, it is now, upon due consideration of the court, ordered and decreed that the decree of the court below be reversed and set aside, and the plaintiff's bill restored; that upon the plaintiff giving bond and sufficient surety, to be approved by the Court of Common Pleas, in the sum of $8000, an injunction shall be issued out of that court to the defendants, restraining and enjoining them from continuing to construct and complete their railroad through and upon the premises of the ·plaintiff described in his bill, until they shall have given adequate security, to the satisfaction of the said court, in a sum of not less than $8000, that they will pay to the plaintiff all such damages as shall be finally awarded or adjudged to him, or else that they shall and will elevate that part of their railroad passing over the premises of the plaintiff to such a height as shall do no injury to the water-power of the plaintiff on his said premises. And it is ordered that the defendants pay the costs, and that the record be remitted to the Court of Common Pleas to cause this decree to be carried into full execution.