# COURT OF ERRORS AND APPEALS,

## JANUARY TERM,

## 1888.

———●———

### J. Alexander Fulton v. The Town of Dover.

*Eminent Domain—Statutes, Construction of—Municipal Corporations.*

An act of the legislature empowering the town council of a municipal corporation to fix the amount of compensation to be paid for private property taken for streets, is not open to the objection that the tribunal so provided is not an impartial one, and hence in conflict with the Federal Constitution, prescribing that no State shall deprive any person of life, liberty or property without due process of law, nor with Section 8 of Article 1 of the Delaware Constitution, prescribing that no man's property shall be taken or applied to public use without compensation —since the determination of the town council is not final, but an appeal therefrom to a commission of five freeholders is provided in said Act.

Where a party whose land has been taken for a street under said Act has failed to avail himself of the opportunity given by the Act to appeal from the decision of the town council fixing the amount of his compensation, he is bound by such decision, provided all the proceedings of the council were in conformity with the Act.

It is not requisite to the validity of proceedings by the town council, under said Act, assessing the compensation to be paid for private property taken for opening a street, that all the members of the town council be present; it is sufficient if a majority of the members are present.

In assessing such compensation, the town council has a right to estimate and deduct special benefits to the owner's adjacent lands.

The " survey and location," after which a notice to the owner is required by said Act to be given, must be made after, and not before, the town council shall have determined to locate the street and shall have fixed the compensation therefor.

Giving such notice on the day after making such survey and location satisfies the requirement of the statute that the notice shall be given immediately after the survey and location.

Where the owner of certain land had continued to use it for his private purposes, and there was no evidence that the public had ever actually used it as a highway, and the municipal authorities had taken proceedings to take the land for a street, it must be adjudged that there had been no such user by the public or acceptance by the municipality, as would make an alleged dedication of the land complete.

COMEGYS, C. J., dissents.

*(February 1, 1888.)*

CROSS APPEALS from a decree of the Chancellor sitting in and for Kent County, rendered in an action brought to restrain the opening of a public street across complainant's land, making perpetual a preliminary injunction as to the sections of the proposed road across a portion of the land and dissolving it as to the section across another portion. *Reversed in part.*

J. Alexander Fulton was the owner of a tract of land containing about forty or fifty acres, bounded on north by Clara street, on east by Governor's avenue and an alley, on the south by Cecil street, and on the west by the Delaware Railroad. On the 15th day of December, 1884, at a meeting of the Town Council of the Town of Dover, a petition was presented to said Council, signed by Thomas R. Taylor and twenty-six others, citizens of said town, asking the Town Council to locate, lay out, and open a new street through the land of J. Alexander Fulton, from where Queen street now terminates on Cecil street to Clara street, making the same a continuation of said Queen street to Clara street. The said petition was read and referred to the Committee on Streets.

On the 3d day of February, 1885, the said Committee on

Streets reported to said Council that the opening of said street would cost $900. On the 7th day of December, 1885, at a regular meeting of the Council, the said report was taken up, and said Council thereupon determined by resolutions to locate and lay out the said street, and fixed the compensation therefor at the sum of six cents. And at said meeting the Committee on Streets was instructed to have the said street surveyed and laid out as one of the public streets of the town, and that the same, when so laid out, should be a public street of the Town of Dover of the width of sixty feet. On the 25th day of March, 1886, Wm. A. Atkinson, a surveyor, being employed by the Street Committee for that purpose, did survey and locate the said street, and did, on the same day, make a report to Hiram Reedy, President of Council, and to the Street Committee. On the 26th day of March, 1886, J. Alexander Fulton was notified in writing of the determination of said Council to open said street, and was furnished a general description of the location thereof, and the amount of damages or compensation allowed to him. On the 30th day of March, 1886, J. Alexander Fulton gave notive to Hiram Reedy, President of Council, that he was dissatisfied with the amount of compensation or damages, and that he appealed from the assessment of compensation or damages. That eight days after said 30th day of March J. Alexander Fulton called on said Hiram Reedy as President of Council to select five freeholders whom the Judge might appoint to assess the damages for the opening of said street. On the 8th day of April, 1886, said Fulton filed a paper with said Reedy, claiming to withdraw his notice of appeal.

The case having been heard by the Court of Chancery,

*Saulsbury, Chancellor*, delivered the following opinion :

In 1879, J. Alexander Fulton, the complainant, being the owner of a tract of land adjoining the town of Dover and immediately north and west thereof, caused the same to be surveyed as an

addition thereto.   He caused the map of the same to be made and recorded in the Recorder's office of Kent County, in which streets and alleys, running north and south, east and west, are described and located.   Of these streets, Division, Fulton, Cecil, Mary and Clara, are described as extending from State street to the Delaware Railroad and beyond, and running east and west.   Bradford street, Governor's avenue, New street, Queen, Kirkwood and West streets are described on the map as running north and south.   The streets run at right angles, and are all described as sixty feet wide.

Upon the map, recorded as aforesaid, there is indorsed a note° in the following words:   "All the streets are sixty feet wide.   All the alleys twelve feet, except the one between State and Bradford streets, which is fifteen feet wide.   The streets running east and west run at right angles with State street, New and Queen streets terminate in Mary street, on the north.   Kirkwood and West in Cecil street on the north.   All the streets west of the Delaware Railroad terminate in Mary street on the north.   The lines appearing on the plot north of Mary street and west of the railroad were never marked on the ground, and were merely experimental and prospective."

Mr. Fulton, according to this plan delineated on the map, sold lots, amounting somewhere to near 100 in number, to different persons, many of which have been built upon as places of residence or business; chiefly the former.   Fulton's addition has been included within the limits of the town of Dover; the deeds from him to the purchasers of lots all have referred to the recorded plot or map.

By Act of the General Assembly entitled, " An Act to Incorporate the Town of Dover," it is provided in the seventh section thereof that " The town council shall have power, upon the application of ten or more citizens of the town, by petition for the purpose, to locate, lay out, and open or widen any new street or streets, lane or lanes, or alley or alleys, or widen any street heretofore laid out, or hereafter to be laid out in said town, or reopen any old street or streets, lane or lanes, or alley or alleys, now closed, or

6

which may hereafter be closed, which ten or more citizens may desire to be located, laid out and opened, or widened or reopened, allowing to the persons, respectively, through or over whose lands such street or streets, lane or lanes, or alley or alleys may pass, such compensation therefor as they shall deem just and reasonable under all circumstances ; which compensation, if any be allowed, shall be paid by the treasurer of the town out of the money of said town, upon warrants drawn upon him by order of the council aforesaid."

By the eighth section of said Act, it is among other things provided that " Whenever the town council shall have determined to locate and lay out or widen any street, lane or alley, and shall have fixed the compensation therefor, it shall be their duty, immediately after the survey and location of the said street, lane or alley, to notify, in writing, the owner or owners of the real estate through or over which such street, lane or alley may run, of their determination to open and widen the same, and to furnish a general description of the location thereof, and also the amount of the damages or compensation allowed to each ; and if such owner be not resident within the said town, to notify the holder or tenant of said real estate; but if there be no holder or tenant resident in said town, the said notice may be affixed to any part of the premises."

It seems that the petition of Thomas R. Taylor and twenty-six other citizens of the Town of Dover was presented to the town council on the 15th day of December, 1884, requesting the said town council to locate, lay out and open a new street through the land of the said J. Alexander Fulton, from where Queen street now terminates in Cecil Street, making the same a continuation of said Queen street to Clara street ; and that said petition was received, and referred to the committee on streets.

No public action was taken in respect to the opening of Queen street until the 7th day of December, 1885, when the report of the street committee, in relation to the opening of said street, was taken up for consideration, and the following resolves were adopted :

*Resolved*, That Queen street be opened and extended from

Cecil street to Clara street, of the width of sixty feet, taking into said street sixty feet front on Cecil street (the said front being on the direct line of Queen street as now opened) and running from thence, the same width, to Clara street to a point where the road, surveyed and laid out under Chapter 544 of Volume 17 of the Laws of Delaware, ends on said Clara street (the center of said Queen street as extended being the center of the said road at its termination on said street), of the lands of J. Alexander Fulton ; and that said J. Alexander Fulton be allowed the sum of six cents as damages ; and that sum be paid to said Fulton."

*Resolved*, That the committee on streets be instructed to have the said street, as extended, surveyed and layed out as one of the public streets of the town ; and that the same, when so laid out, is hereby declared to be a public street of the Town of Dover, of the width of sixty feet."

The report of the street committee was made to the town council on the third day of February, 1885 ; and no action was taken by the council in respect to it until said 7th day of December, 1885. No notice of the condemnation proceedings by the town council was given to Fulton until the 26th day of March, A. D. 1886, when such notice was given in the following words :

" DOVER, DEL., March 25, 1886.

Mr. J. Alexander Fulton :

You are hereby notified that the town council of the Town of Dover, at its regular meeting on the 7th day of December, A. D. 1885, did resolve to open Queen street from Cecil street to Clara street, of the width of sixty feet; and that they have condemned sixty feet front and 1,260 feet deep of land belonging to you. And that the said council has allowed you, as damages, the sum of six cents.

A. S. Kirk, Clerk of Council."

From these proceedings of the council, Fulton appealed ; but, from not having done so in time or from other cause, withdrew it,

and has filed his bill in this court praying an injunction against the Corporation from further action, under their proceedings, in the taking of his land and the opening of Queen street.

Upon the above state of facts, I am of the opinion, first, that there was no necessity of any condemnation proceedings by the town council, of that portion of Queen street lying between Cecil and Mary streets. It had already been dedicated to public use by Mr. Fulton, by the survey and map hereinbefore referred to, and by the sale of lots to the different purchasers from him, and conveyance of said lots by him to the purchasers, in which the map, which he caused to be made and recorded with the streets thereon particularly described, is distinctly referred to.

This map, as remarked by the Court in the case of *Rowan's Exrs. v. Portland*, 8 B. Mon., 235, (a case very similar in every respects to this), is to be assumed as the representation of the town in which the lots were sold; and not as a merely verbal, but as a written and recorded representation of its localities and divisions, its streets and alleys, so far as they are indicated by it. In all these respects it is to be regarded as having entered into and formed a part of every contract for the sale of a lot in the town, by its number or position in the plan; and as having been adopted, and confirmed by every conveyance of a lot described by similar reference. It is, in fact, identified with the town itself; and every reference to, or recognition of the town, is a recognition of the plan by which its various divisions and the localities and uses of its different parts are identified. Every purchaser of a lot, according to the plan, acquired an interest in it, not only as evidence of the position of his purchase, but as evidence also of the several advantages and privileges, pertaining to the town and the lots, as indicated by the plan and especially as evidence of the localities, divisions and uses of its various parts as therein presented. In purchasing and paying for his lot, he purchased and paid for as appurtenant to it, every advantage, privilege, and easement which the plan represents as belonging to it as a part, or to its owner as a citizen of the town; and

the conveyance of each lot with a reference to the map, or merely as a part of the town, was a conveyance of all these appurtenances as ascertained by the map. These conveyances, in connection with the map to which they refer, operate as a conclusive grant or covenant, securing to the purchasers and to the town all advantages, privileges and easements to the lots of the said town.

The notoriety, actual as well as legal, of the acts involved in the making of Fulton's addition to Dover; the laying out of the same upon the land; the representation of it upon a map, open to public inspection, and recorded in the office of the Recorder of Deeds; the sale and conveyance of lots according to that plan; the record of the deed referring to the plan; the subsequent inclosure and improvement of some of them for business or residence; and the existence of the addition to the Town of Dover upon the land must be considered as giving to the world such notice of the plan to which all these acts and facts have reference, as to preclude the possibillty of afterwards acquiring from the original proprietor, or of asserting, or of claiming, with a good conscience, any right or interest inconsistent with those which, according to the plan of the addition thus made by him to the town, are appurtenant to the lots; and are, therefore, granted to or held for the lot owners or citizens and the local or general public.

The right acquired by a purchase of a lot in this addition to Dover is not confined to the mere use of the ground purchased; but extends to the use of all the streets, alleys and other public rights in the town, according to their appropriate purpose.

These opinions, in respect to the rights of purchasers of property on streets dedicated to public use by the owners of land over which they pass, and of the public therein, are expressed almost in the exact words of *Chief Justice Marshall*, of Kentucky, in the opinion delivered by him in the case of *Rowan's Exrs. v. Portland.* And they have been so expressed because it is difficult to improve upon the language used by him, und because they are eminently applicable to the present case.

In my opinion, the town council of Dover had the right at at any time after Fulton's addition was, by law, made a part of the Town of Dover, and after Mr. Fulton, so as aforesaid, dedicated said streets to the use of purchasers of lots on said street and to the public, to do whatever was necessary and proper for rendering them fit for travel, without taking any steps whatever toward the condemnation of the land over which they passed, under the Act for the incorporation of the Town of Dover, and that therefore they might then, and may now, if anything is necessary for that purpose to be done to render Queen street from Cecil street to Mary street available to public travel, do whatever is so necessary without reference to said Act of incorporation.

In respect to that portion of Mr. Fulton's land over which it is proposed to extend Queen street to Clara street opposite the new county road, mentioned in the bill, and also in the resolution adopted by the town council, the case would be different. The land over which Queen street is thus proposed to be extended, has never been dedicated by Mr. Fulton to the purchasers of lots from him or to the public. Condemnation proceedings would be necessary under the Act for extending said Queen street over the land between Mary street and Clara street.

The proceedings taken by the town council heretofore for that purpose were not in my opinion sufficient, and were not in accordance with the Act from which they derive their authority.

The eight section of that Act, as we have seen, declares that whenever the town council shall have determined to locate and lay out or widen any street, lane or alley, and shall affix the compensation therefor, it shall be their duty, *immediately* after the survey and location of the said street, lane or alley, to notify in writing the owner or owners of the real estate, through or over which such street, lane or alley may run, of their determination to open and widen the same, and to furnish a general description of the location thereof, and also the amount of the damages or compensation allowed to each.

Now, a survey in all cases is not at all necessary, if by a sur-
vey be meant the employment of a surveyor and the actual meas-
urement by him of the land to be condemned.   It is indeed rarely
that such a survey would be necessary.   The persons authorized to
make the condemnation may do so on their view of the premises.
Generally in towns a very small distance and a very small space of
land belonging to an individual is necessary to be condemned in
opening a street.

Nowhere in the Act to incorporate the Town of Dover is a
plot required to be made.   To survey has several significations.   It
may mean to inspect or take a view of; to view with attention;
to view with a scrutinizing eye; to examine; to examine with
reference to condition, situation and value; to measure as land, and
many others.   Survey as a noun, as in the Act referred to, may
mean an attentive or particular view, examination of the land with
a design to ascertain the condition, quantity or value.   It certainly
does not necessarily mean a paper containing a statement of the
courses, distances and quantity of land ; and it does not necessarily
mean a plot of land made by a surveyor as such.   The Act would
seem to contemplate that the survey and location of the street con-
templated to be extended, laid out or widened, should be made be-
fore or at the time the damages were assessed, and not afterwards.
And such seems to have been the view of the town council, if we
are to judge from the notice which they gave to Mr. Fulton, on
the 26th day of March, 1886 ; for in that notice they say :   " You
are hereby notified that the town council of the Town of Dover, at
its regular meeting on the 7th day of December, 1885, did resolve
to open Queen street from Cecil Street to Clara Street, of the width
of sixty feet, and that they have condemned sixty feet front and
1,260 feet deep of land belonging to you, and that the said council
has allowed to you, as damages, the sum of six cents."

It is true this is a general description of the land, and all that
the Act requires; but it is not so particular a description of it as
that contained in the resolution adopted by the council on the 7th

day of December, 1885. It was not on the 25th or 26th of March, 1886, that the town council had determined to locate and lay out or extend Queen Street and fix the compensation therefor, but it was on the 7th day of December, 1885, that they did these things. And the Act of Assembly, under which they acted, declared that it should be their duty *immediately* after doing these things to notify in writing, Fulton, the owner of the real estate through which Queen Street should run, of their determination to open the same, and to furnish a general description of the location thereof, and the amount of damages or compensation allowed to him.

Now, the 26th of March, 1886, was not *immediately* after the 7th day of December, 1885. And notice given on the former day was not the notice required to be given by the Act of Assembly. The law sedulously protects a man's freehold. He cannot be deprived of it except in accordance with law. The question is not what was in fact done between the 7th day of December, 1885, and the 26th of March, 1886, but what might have been done.

A man shall not be deprived of the free use of his freehold except in strict accordance with law.

I am therefore of opinion, for this reason, that Queen Street cannot be extended from Mary Street to Clara Street, under the proceedings had and taken by the town council as set forth in the paper in this cause.

I therefore shall decree that the preliminary injunction heretofore awarded in this cause, so far as it relates to Queen Street, between Cecil Street and Mary Street, be dissolved; and that, so far as it relates to the land between Mary Street and Clara Street, it be made perpetual in respect to any proceedings by the town council heretofore taken and had to the same. And it is ordered that the Corporation pay the costs in three months.

Argued on appeal before Comegys, Ch. J., Houston, Grubb and Paynter, J. J.

*J. Alexander Fulton,* complainant, *pro se:*

No man can be a judge and party at the same time; hence, the town council was incompetent to pass upon the question of damages.

*London v. Wood,* 12 Mod., 687; *Anon.* 1 Salk., 396; *Foxham Tithing,* 2 Salk., 607; *Brooks v. Rivers,* Hardres, 503; Dictionary of Prac. title *Judge,* 749; 3 Bl. Com., chap. 3, 25; 1 Bl. Com., chap. 7, 268; 1 Jac. Law. Dict., 192; 3 Jac. Law. Dict., 549; 2 Jac. Law. Dict., 175; *Mitchell v. Kirtland,* 7 Conn., 229; *Dyer v. Smith,* 12 Conn., 391; *Powers v. Bears,* 12 Wis., 213.

The assessment of damages is a judicial act, involving consideration, discrimination and judgment; and, even had the town council been a competent tribunal to pass upon the question, it was necessary that all the members should be present and act, and the attempt of a less number to assess them as void.

13 Encyclopedia Britannica, 762; Act February 27, 1879, §§ 7, 8, 16; *Crocker v. Crane,* 21 Wend., 211; *Rice v. Dannville etc. Turnpike Road Co.,* 7 Danna, 81; 1 Jac. Law Dict., 194.

The land cannot be taken without compensation. This must be ascertained in a lawful way. There must be a hearing, or opportunity to be heard, before a fair and impartial tribunal. If the Act of February 27, 1879, attempts to authorize a seizure without securing this, it is void.

English Stat. 5 Edw. III., chap. 9; 25 *Id.,* chap. 4; 28 *Id.,* chap. 3, as cited in 4 Jac. Law Dict., 154, 208, 209; 1 Bl. Com., 139; Const. U. S. arts. 5, 14; Const. Del. Preamble, art. 1, § 8; Conclusion, art, 1; *Stuart v. Palmer,* 74 N. Y., 183; *Adams v. Saratoga & W. R. R. Co.,* 10 N. Y., 333; *Curran v. Shattack,* 24 Cal., 432; *Jordan v. Hyatt,* 3 Barb., 275; *People v. Tallman,* 36 Barb., 222; *Mulligan v. Smith,* 59 Cal., 206; *Com. v. Coombs,* 4 Mass., 489; *Powers v. Bears,* 12 Wis., 214; *Kramer v. Cleveland & P. R. R. Co.,* 5 Ohio St., 140; *Vail v. Morris & E. R. R. Co.,* 1 Zab., 189.

The petition of citizens for the opening of Queen Street presented to council December 15, 1884, the resolutions of council adopted December 7, 1885, and the notice to complainant dated March 25, 1886, and served on the next day cannot be connected and treated as one continuous proceeding; but the long delay to proceed under the petition, and also, under the resolutions, was an abandonment thereof.

Act February 27, 1879, §§ 7, 8; *Bensley v. Mountain L. Water Co.* 13 Cal., 306.

The compensation must be adequate and in money. Speculative compensation, as the supposed enhanced value of the adjacent land, is not the compensation meant by the Constitution.

*Edward v. Lawrenceberg, etc., R. R. Co.* 7 Ind., 711; *Bigelow v. W. Wisconsin R. Co.,* 27 Wis., 478; *Carson v. Coleman,* 3 Stock., 106; *Rice v. Danville etc. Turnpike Road Co.* 7 Dana, 81; *Louisville & N. R. R. Co. v. Glazebrook;* 1 Bush, 325; *Sater v. Burlington,* 1 Iowa, 386; *Carpenter v. Landaff,* 42 N. H., 218; *Roberts v. Brown Co. Comrs.* 21 Kan., 247; *Winona etc. R. Co. v. Denman,* 10 Minn., 267; *Sacramento Valley R. R. Co. v. Moffatt,* 6 Cal., 74.

There must be a survey, and the proceedings were void for want of it.

*O'Hara v. Pa. R. R. Co.* 25 Pa., 445; *Rice v. Danville etc. Turnpike Road Co.* 7 Dana, 81, 86; *Vail v. Morris & E. R. R. Co.,* 1 Zab., 190.

No legal right was waived by giving notice of dissatisfaction at assessment of damages and notice of appeal.

*Cincinnati v. Coombs,* 16 Ohio, 181; *Unangst's App.* 55 Pa., 128; *O'Hara v. Pa. R. R. Co.,* 25 Pa., 445.

Every Act of Assembly in derogation of the common law; and every Act establishing a special tribunal or conferring special power, must be strictly construed.

*Watson v. Acquackanonck Water Co.,* 36 N. J. Law, 195; *Harbeck v. Toledo,* 11 Ohio St., 219; *Mitchell v. Kirtland,* 7 Conn.,

229; *Shaffner v. St. Louis*, 31 Mo., 264; *Leslie v. St. Louis*, 47 Mo., 474; *Gilmer v. Lime Point*, 19 Cal., 47; *Stanford v. Worn*, 27 Cal., 171; *Curran v. Shattuck*, 24 Cal., 427; *Adams v. Saratoga & W. R. Co.* 10 N. Y., 328; *Halstead v. Mayor of N. Y.* 3 N. Y., 430.

The Act of February 27, 1879, chap. 107, Vol. 16, p. 140, so far as it provides for taking private property, is unusual, partial, unjust and oppressive; and the assessment was so grossly unjust as to amount to legal fraud, and should be set aside in equity.

An injunction was the proper remedy.

*Leslie v. St. Louis*, 47 Mo., 474; *Moorhead v. Little Miama R. Co.* 17 Ohio, 340; *Unangst's App.* 55 Pa., 128; *Harness v. Chesapeake etc. R. Co.*, 1 Md. Ch., 248; *Powers v. Bears*, 12 Wis., 214; *Curran v. Shattuck*, 24 Cal., 427.

There was no dedication of any part of Queen Street north of Cecil.

There was no intention to dedicate it. It never was opened or used by anyone but the complainant, and up to the present time remains, as it was in 1877, a part of his pear orchard. At the time of the pretended dedication it was outside the town limits. It never was accepted as a highway. The town by its own proceedings, such as they were, acknowledged that it was private property, and never pretended otherwise until this injunction was granted.

*Williams v. N. Y. etc. R. Co.*, 39 Conn., 509; *Hall v. Meriden*, 48 Conn., 416; *Hayden v. Stone*, 112 Mass., 346; *Steele v. Sullivan*, 70 Ala., 589; *Hawley v. Baltimore*, 33 Md., 270; *Hall v. Baltimore*, 56 Md., 187; *Peoria v. Johnston*, 56 Ill., 45; *Harding v. Hale*, 61 Ill., 192; *Forbes v. Balenseifer*, 74 Ill., 183; *Booraem v. N. Hudson Co. R. Co.*, 12 Stew. Eq., 465; *White v. Bradley*, 66 Maine, 254; *Ranthum v. Halfman*, 58 Tex., 551; *Ogle v. Phila. etc. R. Co.* 3 Houst., 267; *State v. Atherton*, 16 N. H., 203; *Bissel v. N. Y. Cent. R. Co.* 26 Barb., 630; *Witter v. Harvey*, 1 McCord, 67; *State v. Nudd*, 23 N. H., 327; *Remington v. Millard*, 1 R. I., 93; *Cemetery Asso. v. Meninger*, 14 Kan., 312.

*James Pennewill* and *C. H. B. Day*, for defendant:

All the proceedings of the town council, in respect to the opening of Queen Street through the land of complainant, were in conformity with the requirements of sections 7 and 8, chap. 107, Vol. 16, Laws of Delaware, and the notice prescribed by said section 8, to be given in writing to the owner or owners of the real estate, through or over which the street might pass, was given to said complainant in due time.

*Re Furman Street,* 17 Wend., 649; *Re District of Pittsburgh,* 2 Watts. & S., 320; *Easton v. Walter,* 1 Pa. (L. ed. 671, 673); 2 Cent. Rep., 589, 591; *Grace v. Newton Bd. of Health,* 135 Mass., 490; *Baltimore v. Bouldin,* 23 Md., 370.

The State, having the right of eminent domain in all the lands of its citizens, may exercise this right through private corporations or individuals, as well as by its more direct agents.

In assessing compensation, the advantage or injury resulting to the owner of the lands from the laying out of the street may be considered. The intrinsic value of the land taken is not the true rule of damages.

2 Dillon, Mun. Corp., §§ 602, 615, 616; *Dunlap v. Mount Sterling,* 14 Ill., 251; *Curry v. Same,* 15 Ill., 320; *Dorgan v. Boston,* 12 Allen, 223; *Balt. v. Bouldin,* 23 Md., 328; *People v. Smith,* 21 N. Y., 598; *People v. Brooklyn,* 4 N. Y., 419; *Beckman v. Saratoga & S. R. Co.,* 3 Paige, 45; *Alexander v. Balt.,* 5 Gill., 383; *Livingston v. Mayor of N. Y.* 8 Wend., 101; *Indianapolis Water Works Co v. Burkhardt,* 41 Ind., 364; *Whiteman v. Wilmington & S. R. Co.,* 2 Harr. (Del.), 514.

The authority conferred upon the town council to lay out streets, and the proceedings had under the Act of the Legislature, is "due process of law." The legislative Act is itself due process of law.

*People v. Smith,* 21 N. Y., 595; *Murray v. Hoboken Land Improvment Co.* 59 U. S., 18 How., 272 (15 L. ed.), 372; *Bank of*

*Columbia v. Okely*, 17 U. S., 4 Wheat, 235 (4 L. ed. 559); *David-son v. N. O.*, 96 U. S., 97 (24 L. ed., 616); *Balt. v. Bouldin*, 23 Md., 328; *People v. Brooklyn*, 4 N. Y., 419; *Stuart v. Palmer*, 74 N. Y., 190; *Owners of Grounds v. Albany*, 15 Wend., 374; *Livingston v. Mayor of N. Y.*, 8 Wend., 100.

A majority of the town council is all that is required to constitute a quorum for the transaction of any business.

Chap. 107, Vol. 16, Laws of Delaware, § 16; *Cupp v. Seneca Co.*, 19 Ohio St., 173.

A court of equity will not interfere where there is an adequate remedy at law, or where the party did not seek to vindicate his rights in the proper place and in due time.

*Stevens v. Beekman*, 1 Johns Ch., 318; *Jerome v. Ross*, 7 Johns Ch., 315; *People v. Brooklyn*, 4 N. Y., 442; *Bank of Columbia v. Okely*, 17 U. S., 4 Wheat., 242 (4 L. ed., 559); *Gott v. Carr*, 6 Gill & J., 311; *Stuart v. Baltimore*, 7 Md., 514; *Methodist Church v. Balt.*, 6 Gill., 391; *LeRoy v. Mayor etc. of N. Y.*, 4 Johns., Ch., 352.

Where the owner of a tract of land has laid the same out in lots, and has made a map or plot thereof and recorded the same, and has also made sales of the lots to various purchasers with reference in the deeds of conveyance to said map or plot, the said conveyances, taken in connection with the map or plot to which they refer, operate as a conclusive grant or covenant, securing to the purchasers and to the town all the advantages, privileges and easements to the lots of said town; and the town has a right at any time to open said streets without condemnation proceedings.

*Cincimnati v. White* and *Barclay v. Howell*, 31 U. S., 6 Pet., 431, 504 (8 L. ed. 452, 479); *Balt. v. Bouldin*, 23 Md., 372; *White v. Flannigan*, 1 Md., 525; *Livingston v. N. Y.*, 8 Wend., 85; *Watertown v. Cowen*, 4 Paige, 510; *Rowan v. Portland*, 8 B. Mon., 232; *Methodist Episcopal Church Trustees v. Mayor etc. of Hoboken*, 4 Vroom, 13.

GRUBB, J. "The questions to be determined by this Court are presented by two appeals from the decision of the Court of Chancery rendered upon the same bill and answer. One appeal is by the defendants below from said decree so far as it perpetually enjoins the defendants from extending and opening Queen street, in the Town of Dover, through the lands of the complainant, from Mary street to Clara street. The other appeal is by the complainant below from said decree so far as it dissolves the preliminary injunction enjoining the defendants from extending and opening said Queen street, through said complainant's lands, from Cecil street to Mary street.

The facts disclosed by the record are substantially as follows: J. Alexander Fulton, the complainant below, was the owner of 50 acres, more or less, of land adjoining Dover, in Kent county, Delaware, bounded on the north by Clara street, on the south by Cecil street, on the east by Governor's avenue and an alley, and on the west by the Delaware Railroad. Said tract was used by him as a fruit and vegetable farm, and for raising nursery stock; and the

portion thereof required for the proposed extension of Queen street was, at the time the proceedings for condemning the same were taken, entirely occupied by fruit trees, and used, not by the public, but exclusively by the complainant for his fruit and nursery purposes. Said portion was also inclosed at its northern or Clara street boundary by a substantial hedge. About the year 1878, the whole of said tract had been designated by him as an addition to Dover, and a plot or map thereof, showing the streets thereon, etc., recorded by him in the Recorder's office in Kent county. Since then he has sold certain parcels of said land, describing the same in the respective deeds thereof with reference to said plot, but has sold none on said Queen street, either between Cecil and Mary, or between Mary and Clara streets.

By an act entitled "An act to re-incorporate the Town of Dover," passed February 27, 1879, said tract of land was included within the corporate limits of said town. Section 7 of said act empowers the town council of Dover, upon the petition of the prescribed number of citizens, to locate, lay out, and open and widen streets, lanes, alleys, etc., in said town, and to allow and pay the owner of lands taken such compensation as they shall deem just and reasonable under the circumstances. Section 8 of the act requires that notice thereof shall be given to the owner by said council, within a prescribed time, and provides for an appeal by any dissatisfied owner to a commission of five freeholders, whose determination shall be final and conclusive, said commission to be appointed by the resident judge of the county. Under and by virtue of these provisions, proceedings were taken for the purpose of extending and opening Queen street through complainant's said land from Cecil street to Clara street, thereby crossing Mary street, (an unopened street at this point,) lying between and parallel with said street. On December 15, 1884, a petition, signed by the required number of citizens, was presented to the town council, asking for the said extension of Queen street, and was thereupon read and referred to the committee on streets. The complainant was im-

mediately notified of all this, and, on December 26, 1884, by letter, presented to the council, through its president, an itemized statement of damages which should be allowed to him by reason of the opening of said street.   On February 3, 1885, the street committee reported that the costs of extending and opening said street would be $900.   No further action was taken until the regular monthly meeting of said council, held on December 7, 1885, when the said committee's report was taken up, and resolutions respecting the extension of Queen street adopted.   These resolutions contained : — *First*, The town council's determination that said street should be opened and extended from Cecil street to Clara street, of the width of 60 feet ; *Second*, Said council's allowance of six cents damages to said complainant ; *Third*, Said council's instruction to the street committee to have the said. street, as extended, surveyed and laid out as one of the public streets of the town ; and, *Fourth*, Said council's declaration that the same, when so laid out, is to be a public street of the town of Dover, of the width of 60 feet.   It appears by the record that but six of the nine members of the town council were present when said resolutions were adopted ; and also that complainant was not present.   Although the record shows that complainant was immediately notified of the said presentation and reference of the petition at the meeting of said council on December 15, 1884, and that the proposed extension was pending before that body, and had presented his claim for damages by his said letter of December 26, 1884, yet it does not appear that he had received any express notice to be present at the proceedings taken by the town council at their meeting on December 7, 1885 ; nor does it appear that any statutory or constitutional provision expressly required such notice.

On March 25, 1886, William A. Atkinson, a surveyor, surveyed and located said extension of Queen street by direction of the street committee, and the same day made his report thereof to said committee and the president of council.   On March 26, 1886, notice was given to complainant of council's determination to open

said extension of Queen street, with a general description of the location thereof, and the amount of compensation allowed to him. On March 30, 1886, complaintiff ·gave notice to the council that he was dissatisfied with said damages, and did appeal therefrom. On April 8, 1886, he notified the council that his said notice of appeal is withdrawn. Thereupon the defendants proceeded by cutting down complainant's hedge, etc., to open and prepare said extension of Queen street for public use. Whereupon the proceedings below were instituted by complainant to enjoin them from so doing, and are now brought here on the two appeals from the decision rendered therein.

The defendants below claim that the preliminary injunction should have been dissolved by the chancellor so far as it related to the lands of the complainant lying between Mary Street and Clara Street, as it was, in so far as it related to his lands lying between Cecil Street and said Mary Street. They claim this because they contend that the general assembly, by the said act of February 27, 1879, reincorporating the town of Dover, lawfully delegated to the said defendants the power to make and open the said extension of Queen Street conformably to the provisions and requirements of said act; and that all their acts and proceedings in the premises are well and lawfully done in strict conformity therewith. On the contrary, the said Fulton, complainant below claims that the Chancellor should have made the said injunction perpetual as to the whole of said proposed extension, as well between Cecil and Mary Streets as between Mary and Clara Streets. Said complainant rests his claim upon two general grounds *First.* That so much of said act of 1879 as authorizes the town council to assess such compensation as they shall decree just and reasonable for any lands taken for the opening or widening of streets, etc., in the town of Dover, creates a tribunal which is not a disinterested and impartial one, and therefore is inhibited by section 8 of article 1 of our State constitution, and also by section 1 of the fourteenth amendment to the federal constitution. *Second.* That all the acts and proceedings of the said

7

defendants below in relation to the proposed extension of said Queen Street have not been well and lawfully done in due conformity with the provisions and requirements of said act of 1879.

This court must therefore determine—*First*, whether this particular provision of the act is a lawful delegation and exercise of the power of eminent domain; and, *second*, whether the proceedings of the said defendants have been in due conformity with the provisions and requirements of said act delegating to them said power. The right of eminent domain is inherent in the government; it is not conferred, but limited, by the constitution. Subordinate to such constitutional restriction as may be imposed upon its exercise, all property is held and all contracts are made subject to this right. The legislature, instead of directly exercising the power to take private property for public use, may delegate it (subject always to existing constitutional restrictions) to municipal corporations, or other public agencies, and it may also confer upon them the right to decide upon the existence of the necessity for its exercise. This power, with all constitutional and statutory limitations and directions for its exercise, must be strictly pursued, and courts will, within reasonable limits, strictly construe this power, require a strict compliance with all conditions precedent to the exercise of it, and all provisions as to the manner of its exercise, intended for the benefit and protection of the citizen. It is not now necessary to cite authorities in support of these well-settled principles, but only to apply them in the determination of the questions raised at the argument.

In support of his contention that the town council is not an impartial, and consequently not a lawful, tribunal for the assessment of his damages, and that therefor no constitutional compensation has been allowed him, the complainant refers to the following clause of section 1 of the fourteenth amendment to the federal constitution: "Nor shall any State deprive any person of life, liberty, or property without due process of law;" and also to the following clause of section 8 of article 1 of our State constitution:

" Nor shall any man's property be taken or applied to public use without the consent of his representatives, and without compensation being made." In view of the fact that section 8 of the said act of 1879, reincorporating the town of Dover, provides for an appeal by the owner from the assessment of damages by the town council, and for the appointment, upon his application, by the resident judge of the county, of a commission of five freeholders to make a final and conclusive ascertainment of his damages, these particular constitutional provisions will not support the contention of the complainant, nor maintain his objection to the validity of the assessment and the constitutionality of the compensation as determined by said town council, in a case like the present, where the owner has neglected to prosecute his appeal, and thus have ample opportunity to be heard before a fair and impartial tribunal appointed at his own request. Whatever doubts may have once existed as to the propriety of such a conclusion, its correctness is now maintained and establised by both courts and commentators of approved authority. It was formerly questioned whether the compensation awarded by a commission, without the intervention of a jury, would be the required constitutional compensation for lands taken under the power of eminent domain. In this State this question was determined in the affirmative by this court, in its adjudication of the case of *Whiteman's Ex'rs v. R. R. Co.*, 2 Har., (Del.) 524. And this view has received the sanction of high authority elsewhere. 2 Dill., Mun., Corp., § 619, and note 3, citations. And this, too, even when a special provision of a state constitution provides " that no private property shall be taken for public use with. out just compensation, as agreed upon between the parties, or awarded by a jury, being first paid or tendered to the party entitled to such compensation." Under this special provision it has been held that the legislature may pass a law authorizing commissioners to assess the value of the property, if the law secures to the owner the right of a jury trial, upon an appeal, to be taken in a specified reasonable time ; neglect or refusal to appeal being regarded as a

waiver of the right to have the damages awarded by a jury. *Steuart v. Baltimore,* 7 Md., 500 ; 2 Dill., Mun., Corp., § 618, note 3, citations. If this view be correct (as it is believed to be) when a constitutional provision specially prescribes that the compensation shall be awarded by a jury, then it will be equally—indeed, *a fortiori,*—applicable where, as in the present case, no such special constitutional provisions exist, but only the above-cited federal " due process," and state " compensation " general constitutional clauses. Cooley, Const., Lim., 356, 357 ; 2 Dill., Mun., Corp., § 619. Accordingly, it has been held to apply where it has been provided that an assessment may be made by a committee of a city council, if there is also a provision that the owner may have a review by the courts on application. *McMicken v. Cincinnati,* 4 Ohio St., 394 ; *Steuart v. Baltimore,* 7 Md., 500, 514. And the like doctrine has been applied in other cases where a review by some tribunal of appeal has been provided.*Reckner v. Warner,* 22 Ohio St., 275, 295, 296 ; *Thorndike v. Norfolk,* 117 Mass., 566 ; *State v. Graves,* 19 Md., 351, 369.

The conclusion therefore seems to be warranted, both by reason and authority, that the town council of Dover were lawfully and constitutionally authorized to make a preliminary or primary and somewhat summary assessment of the compensation due to the complainant for his lands required for the said extention of Queen Street, and that the complainant would be bound by this assessment if he failed to prosecute his appeal, provided all the proceedings of the town council were in due conformity with the provisions of the act of 1879. The fact appears of record, and is undeniable, that he refused or neglected to prosecute said appeal within the prescribed period. He must therefore be presumed to have waived or abandoned his right to secure an opportunity to be heard before, and to have his damages determined and awarded by an impartial and lawful tribunal of review. He has been tendered the compensation allowed him by the town council and has declined to receive it. He must therefore acquiesce in the occupation and use of

his lands for the proposed street extension, unless the proceedings in that behalf are found to be in some respect invalid.

The record discloses, and accordingly it is objected, that a majority only, and not all, of the town council were present when the determination to extend Queen street, and the assessment of the complainant's compensation, were made, and when the street committee were instructed to have the said street, as extended, surveyed and laid out as one of the public streets of the town ; but these acts, doings, and determinations of this majority under the proper construction of section 16 of said act were as good and binding as if the whole council had participated therein. *Cupp v. Commissioners,* 19 Ohio St., 173. It is further objected that the smallness of the compensation would seem to indicate that the town council estimated and deducted special benefits to complainant's adjacent lands. This, however, would not be a valid objection to their proceedings, for such a course would be warranted by the terms of section 7 of said act, and by judicial authority. *Whiteman's Ex'rs v. Railroad Co.,* 2 Har. (Del.), 524. Another ground of objection to the validity of the said proceedings is that the notice required to be given to the complainant by section 8 of the act, in order to enable him to take and prosecute his appeal, was not duly given by the defendants. It is urged that the town council, on December 7, 1885, determined to extend and open Queen street, instructed its street committee to have the said street, as extended, surveyed and laid out, and fixed the compensation of the complainant, but that said council did not give the latter the prescribed notice thereof until March 26, 1886, and that therefore the said proceedings are invalid, and the complainant is not bound thereby. The force of this objection depends upon the determination whether the prescribed " survey and location " mentioned in the phrase " immediately after the survey and location of the said street," in section 8 of the act, are to be construed as required by said act to be made, and also as having been made, in the present case, on or prior to the said seventh of December, 1885, or not until the twenty-fifth of March, 1886.

The record shows that a " survey and location " of the said street were made on March 25, 1886, by William A. Atkinson, a surveyor, under the direction of the said street committee, by running a line for the center of the proposed extension of Queen street, and driving stakes in said line ; a report of which, and of the precise length of said center line, he on the same day made to said committee, and also to the president of the council.   The exact length of said center line, according to this survey, was 1,260 feet ; and prior to said survey, so far as the record discloses, the said lines does not appear to have been located, nor its precise length specified.   Its said length next appears, according to the record, in the notice to complainant of March 26, 1886.   With the precise length of this line given, and the line itself located by means of the stakes driven therein, with the width of the street fixed by council at 60 feet wide, such a " survey and location " were thereby furnished as would readily inform the complainant of the precise land to be occupied, as well as any commission thereafter appointed to " view " —as the act prescribes they shall do—the premises and reassess the damages for the taking thereof.   Such a survey and location, therefore, would be a reasonable and due compliance with the act, and they should be adjudged so to be.

The pivotal part of said act—because upon it depends the validity of the proceedings—is the provision for the appeal from the primary and somewhat summary (as the legislature have manifestly regarded it) determination and allowance of compensation by the council.   While the view and estimation of the lands by the town council, in their summary proceedings, might be informal and general in their character, yet it would be especially important that the tribunal of review and final determination should be furnished with a more definite location of the lands to be viewed and assessed by them.   Therefore the prescribed survey and location, which would not be necessary for the information and primary action of the council, would be essentially so for the final determination of the commission of review.   And a careful consideration of the act it-

self furnishes conclusive evidence that such was the view and purpose of the legislature which enacted it.     Section 8 provides:
" Whenever the town council shall have determined to locate and lay out or widen any street, lane, or alley, and shall have fixed the compensation therefor, it shall be their duty, immediately after the survey and location of the said street, lane, or alley, to notify in writing the owner or owners of the real estate through or over which the same may run, of their determination to open and widen the same, and to furnish a general description of the location thereof and also the amount of the damages or compensation allowed to each."     "If any owner be dissatisfied with the amount of compensation or damages allowed by the town council, as aforesaid, he or she may, within 10 days after such notice as aforesaid, appeal from the said assessment of compensation or damages," etc.   Taking the plain and natural import of this language, and the order of occurrence of the phrases " shall have determined to locate and lay out" and " shall have fixed the compensation " in their relation to the subsequent phrase " after the survey and location," it seems clear that the "survey and location" after which the notice to enable the owner to appeal is to be given, must be made after, and not before, the council " shall have determined to locate the street, and shall have fixed the compensation therefor.

In section 7 of the act, which authorizes the town council to lay out and open streets, etc., and to fix the compensation, etc., therefor, there is nothing specifying that they shall, before fixing said compensation, and determining to lay out and open any street, etc., make or cause to be made any " survey and location " of such street, etc.; nor is there any provision elsewhere in said act prescribing any such condition precedent thereto.   The only provision prescribing any survey and location of such street, etc., is to be found in section 8 of the act.   This is the provision which authorizes an appeal from and a review of the assessment of damages by the town council.   The prescribed survey and location, therefore, relate solely to the appeal proceedings provided by section 8, and no

to the assessment of compensation, etc., by council, authorized by section 7; and are intended especially for the information of the commission of review, part of whom are to be non-residents of the town of Dover, not for that of the council, who must be presumed to have had competent knowledge of the location, quantity, and value of the lands situated within their town limits, which they have determined officially to take for its .streets.   The construction which the council itself has placed upon this provision of the act is in conformity with this view, for its record discloses that the council, when it "determined" on December 7, 1885, to extend and open Queen street, at the same time instructed the street committee to have said street "surveyed and laid out," and thereupon declared the same, "when so laid out," to be "a public street of the town of Dover, of the width of sixty feet;" thus showing that said survey and location had not been made at the time of said determination and instruction.   Confronted by this fact, and by others of record, it is impossible to assume that the survey and location of the proposed extension of Queen street, required by the act for the purposes of an appeal, had been made on December 7, 1885, or at any time prior to March 25, 1886.   As the prescribed notice was given by the defendants to the complainant on the next day, March 26, 1886, it was given "immediately," within the true and reasonable meaning of the act, and therefore in due time; so that, in this respect, there has been due compliance with the provisions of the act. Because the street committee did not cause the said survey and location to be made earlier than March 25, 1886, it does not follow that these were not made in due time, within the reasonable requirement of said act, and that the proceedings consequently were invalidated.

The season from December 7, 1885, to March 26, 1886, was unfavorable to the use of the land in question, either for the purposes of the complainant or defendants.   It does not appear that the complainant had planted or built upon it, or done anything to increase its value or change the condition under which it stood in

the previous December, when the council assessed the compensation to be allowed for it. Consequently he was not damnified by the delay to make the survey. Nor did it abridge or divest his right of appeal; that was preserved, and the prescribed notice offering the opportunity therefor actually given to him. He suffers, therefore, by no act of the defendants. He had his remedy, and his opportunity for complete redress, and refused or neglected to profit by either. Accordingly equity can afford him no relief.

The foregoing view of the law applicable to this case disposes of the questions presented by the record. It remains to be considered, however, whether or not the land between Cecil- and Mary Streets, within the proposed extension of Queen Street, had already become a public street of the town of Dover, by dedication, when the said condemnation proceedings were instituted by the defendants. Whether the complainant had or not intended to dedicate the same to public use, it is clear that there is no evidence of record to show that any such dedication thereof had then been accepted either by the public or by the town authorities of Dover. There is record evidence that said land was then covered by pear trees, etc., and used exclusively by the complainant for his fruit and nursery purposes; but there is no evidence, either that the public had actually used the said land as a highway, or that the complainant had sold any land whatever on Queen Street, either between Cecil and Mary, or between Mary and Clara Streets. On the other hand, the condemnation proceedings of the council against all the land required for the proposed extension, as well between Cecil and Mary as between Mary and Clara Streets, of themselves furnish affirmative evidence of record, which is nowhere rebutted, that absolutely negatives any acceptance by the town authorities of the alleged dedication of the same or any part thereof. In view of these facts, it must be held that there was no such use by the public, or acceptance by the town of Dover, as made the alleged dedication complete in legal contemplation. *Ogle v. Railroad Co.* 3 Houst. 273, 277;

*Same v. Same*, Id., 318; *Hawley v. Mayor*, 33 Md., 270, 280; *Hayden v. Stone*, 112 Mass., 346, 350.

It appearing, therefore, upon due consideration of the law and facts of this case, that said condemnation proceedings were lawfully authorized by said act of 1879, and also that said proceedings were instituted and conducted by the defendants, in all respect, in due conformity with the provisions of said act, it is manifest that the court below should have dissolved its preliminary injunction as to the whole of the proposed extension of said Queen Street, and that the decree of this court should be entered in accordance with this view.

COMEGYS, C. J., dissenting:

The principal question in this case, seems to be, whether the plaintiff below dedicated, to the use of the public, a portion of his land, called "Fulton's Addition to Dover," which would be enclosed between parallel lines sixty feet apart, beginning at the northern edge of Cecil Street, and running in continuation by right line with Queen Street, of said town, to Clara Street, or even Mary Street, shown on the map attached to the brief, by him delivered in this court. He was the legal owner in fee of all the land enclosed by the outlines of the "Addition;" and, like every other tenant in fee, could dedicate any part, or the whole, of his land, to public use. The respondents contend that the survey by the complainant of the "Addition" and making a plot of it and recording that plot in the Recorder's Office, with the descriptive notes upon it referring to defined or contemplated streets, and the sale of some of the lots contained within the plan, of themselves constitute a dedication of the streets mentioned or referred to, as and for public streets or highways, of the aforesaid town, for the benefit of said town, or its inhabitants. The contention of the respondent is the contrary, or involves a contrary consideration. If there was dedication by the complainant of the part marked on his map aforesaid attached to his brief, as "Proposed Extension of Queen," then he had no case

at all in the court below, and has none here : because, in the view that there was dedication, no formal steps whatever were necessary to be taken by the Town Council of Dover to open Queen Street, as projected, and shown by the dotted lines, on such map. The Chancellor has, in the reasons for his decree, taken the ground that the proceedings adopted by the Town Council for condemnation of the bed of this projected Queen Street from Cecil to Clara Streets, were invalid as not being in conformity with the statute giving them power of condemnation of ground for streets; and I agree with him entirely. In the view I take of this case, it is not necessary I should go into that question, nor into others raised by the complainant below. But while I agree entirely with the decision of the Chancellor upon the subject of nonconformity by the respondents with the requirements of the town law about taking land for streets, I am unable to reach the conclusion he has done—that this projected Queen Street so far north as Mary, was dedicated, by the acts of the complainant before stated, to the Town of Dover, as and for one of its public streets.

I think it may be safely laid down as law—that, in cases of dedication, to the public generally of a highway, for example, or to a municipal body, of a street, there must, to make the dedication complete, be some act of acceptance on the part of the intended donee of the grant. In the case of public highways, where no positive formal act of dedication is shown, but public user is relied on, it must not only appear that such user has been uninterrupted and continuous for at least twenty years, but that the public authorities have treated the way as a public one, by expending money in repairing it, or by some other unequivocal act indicative of treating it as a public road. While the fact that certain individuals, finding it to their convenience to do so, have used the way for such a period, would be evidence of a grant by the owner of the fee, of an easement of way, and therefore subject him to an action for hindering them in their use of it. Yet no public right grows out of like user—that is dedication of the way to public use until there has

been, in the mode pointed out, acceptance of the donation, with the obligation of its consequent duties. If one divide his farm in two, laying down a road between the parcels and recording his plot of such partitions, and selling lots, fronting upon such road, to different purchasers, would the public at large thereby acquire any right of travel upon such road? I think not. If, without objections on the part of the owner of the farm, the public treated the road as one of the highways of the county, and adopted it into their books of roads as kept by the Levy Court, and committed the repair of it to an overseer—continuing this for a period of twenty years, a public easement, or right of way, would be created, which the owner could not afterwards challenge. But the public would derive no advantage from the fact that a plot of the road was recorded; as that, of itself, would show nothing, but that the seller of the lots and his purchasers intended to place upon record the precise location of their lots, and the way or road to them. The making of the plot, selling by it, with the road laid down upon it, would operate a contract between the seller and those claiming under him, and the respective buyers, and those claiming under them, that the road should, as between such parties, always be and remain a way or road for the benefit of the latter: but none would exist in behalf of the public at large, who would be in no sense a party to the implication of contract between the seller and his purchasers. With them, there would, upon the purchase, arise an obligation, or contract, for the perpetuity of the road, or way, for every use and convenience their ownership and residence of and upon their lots might—require, including the use thereof by all persons having occasion to go to see them on business, or otherwise: but with the general public there would be none, nor would such use by the lot-owners, or rather right of use by them and the others referred to, be ground for supposing any. The freehold of such a road, or way, would still remain in the seller of the lots, subject though it would be to a perpetual easement of open unobstructed way, in behalf of the lot-owners and their successors in title. It would surely be a

great hardship upon an owner of land, if he could not sell a part
of his ground and make proper means of access to it by roads,
if in the county, or street, if in a town, without being
held in the one case as having dedicated them to the
public, or in the other to a corporate town. The lot buyers
have no interest that the way shall be a public highway, but only
that it shall be open to them for all their uses. When the public
meant to make it their highway, the laws furnishes them with the
means of doing so. In a case like the present, there is no intend-
ment of dedication in favor of the whole people of a town, by sim-
ply making a plot, with projected street upon it, and sale of a few
lots, none on the street in question. It is rather that the streets are
for perpetual use by the buyers and their successors in the title.
Those persons are parties to the implied contract for streets; the
general public, nor that of the town, are such in any sense. One
may have a purpose of dedication of ground for a highway, or
street, and may show it by making and recording or otherwise pub-
lishing maps; and yet, until some private individual has purchased
property upon the proposed highway or street, no private interest in
either has been created, nor do the public acquire any rights until
some steps have been taken showing a purpose to accept the dedica-
tion. Until either purchase have been made by an individual, in
the one case, or acceptance of dedication by the public, in the other,
the ground owner may withdraw his scheme entirely (it being but
in the nature of an offer) which could not be, if the making and
publishing and recording of a map had any efficiency whatever
*per se.* Now, while it is not contended that withdrawal can be
made, after private purchase on the faith of the evinced purpose of
making a street. Yet because of that hindrance, no public right
accrues. Otherwise, all the legal idea of dedication to public use as
expressed in the books, must be abandoned. And the reasoning of
this opinion is entirely justified and in harmony with, the true idea
of dedication to public use, which is—a contract implied between
the dedicator and the public, the obligation of which upon the

latter is, that it will accept the highway as such and maintain it in repair. It is quite obvious that in this case, the authorities of the town had, in the beginning, no idea of dedication at all; for they sent out a committee to view the premises and decide upon the expense of opening Queen Street, and kept their report under consideration for about ten months. It fixed nine hundred dollars as the amount of such expense. This did not meet the approval of the Town Council, who cut the amount down to the nominal sum of six cents; but this it is evident from the answer, was because it was believd the property of the complainant below would be actually enhanced in value to an amount greater than any damage he would sustain, by opening the street. All this shows, that the idea of dedication is an afterthought. Be that as it may, and it is not material either way, my opinion is that there was no dedication by the complainant of the proposed extension of Queen Street, to the public.

The first section of Chap. 60 of the Revised Code, defines public highways as follows: "All public roads, causeways and bridges, heretofore laid out as such, or made by lawful authority, or which have been used as such and maintained at the public charge for twenty years, are declared to be common highways." In the case of *Johnson v. Stayton*, 5 Harr., 448, tried in Sussex at the October term, 1854. Judge Harrington in delivering the charge to the jury, said among other things—" The legislature has qualified the common law in this State respecting roads claimed to be such by dedication. So many neighborhood roads exist by the indulgence of land owners, that the common law was considered harsh in reference to forfeiting private land by indulgence, and the legislature has required that such a road shall have not only been used, but maintained and kept up by the public for twenty years, to make it a public road against the owner of the land," page 450. This settles, by a decision what is the evidence of dedication from public user; and it follows, that unless there be such user as the statute prescribes, and the charge recognizes as the law, there can be no in-

ferential dedication.   Dedication must be by actual grant, or such declaration, or conduct, on the part of the land owner as would be treated as an estoppel *in pais*.   Here there is neither grant, nor estoppel.

The case of *Rowan's Exrs. v. The Town of Portland*, 8 B. Mon., 232, upon which that part of the decree of the Chancellor against the complainant below is chiefly based, is a different one in its facts from that before him—it being a case where an owner had founded and laid out a whole town, had made and recorded a map of it, with his declaration upon it, that all sales were to be regulated by the map.   In such case there would seem to be no room for doubt, that all streets shown on such map should be treated as highways of such town for public use—the very consideration, it might—with perfect justice be assumed, which prompted buyers to invest their money, being that they were to be part of the body politic *of a town, shown on the map*.   What the Kentucky Court would have said, in the case before it, if there had been on the statute book of that State, such a feature with respect to dedication as has been pointed out as being upon the pages of our Code, I can only conjecture.   The rights of buyers of lots upon a plot, and those of the public, with reference to streets or highways, are by no means the same; for they do not rest upon the same support.

I am of opinion, upon the above view of the case, that the decree of the Chancellor dissolving the injunction granted by him as to that part of Queen street as projected between Cecil and Mary streets should be reversed; and that the injunction as it respects the whole of said street should be made perpetual; and that the respondent below pay the costs in three months.