ALFRED D. POOLE,

*vs.* ·

THE COMMISSIONERS OF REHOBOTH, CHARLES P. HILL AND EDWARD HILL.

*New Castle, May* 15,1911.

While the filing of a plot, showing streets thereon, constitutes a dedication to the public, the filing of a plot of land on the seashore, showing the location of the ocean, does not amount to a dedication of the beach.

Verbal declarations of a dedicator, made contemporaneously with the dedication, are admissible in evidence to show the scope, where such declarations are against interest and a part of the *res gestae.*

Where the directors of a company orally declared, when selling lots from a plot of lands fronting on the ocean, that no buildings should be placed between certain lots on the ocean, and none were maintained there for over twenty years, such declaration was sufficient to show a dedication to the public.

Where the directors of a corporation engaged in selling its lots informed the purchasers that the space between the ocean and a certain street should be open, the authority of the directors to make such declarations cannot be questioned in a proceeding to secure a preliminary injunction to restrain the obstruction of such space.

While acceptance is a necessary element of dedication, an acceptance by the public will be presumed, where the dedication is beneficial to the public and imposes no burden; and such presumption will be exercised, where land between a street and the ocean was dedicated to public use.

Where the land between a street and the ocean was dedicated to public use, and it was provided that no buildings should be erected thereon, the erection of a bathhouse and a fence on the shore line was an obstruction of the right of a person who had bought a lot upon the street upon faith in the dedication.

Where the land between a street and the ocean was dedicated as a space that should ever be open and unobstructed to the view of the ocean of those persons living on and using the street, the right of such persons was not lost because the ocean washed away the land up to the street line.

Property dedicated to the public for one purpose cannot be used for another public purpose inconsistent with the dedication, or which interfered with the original purpose.

Where the charter of a municipality granted by the General Assembly authorized the town to grant franchises to erect wharves and piers on the beach, the town had no authority to permit the erection of a bathhouse on the beach which had been dedicated to the public use.

Where a property owner was injured by the erection of a bathhouse on the ocean beach, which had been dedicated to the public, he could enjoin such erection, though an indictment would lie to prevent the encroachment, and though upon conviction of an encroachment the Court might order a removal, and though it was the duty of the municipality to prevent encroachment.

Where an owner of land had the right to a view across land which had been dedicated to the public to be kept open, he was entitled to enjoin an obstruction of this view; there being an injury peculiar to him and different from that to the general public.

Where the land between the ocean and the street upon which complainant's property abutted had been dedicated to the public, to be kept open and uninclosed, the complainant could enjoin the erection of buildings upon the land which would cut off his view of the ocean; such erection causing him pecuniary damage by decreasing the value of his property.

Where a bathhouse had already been built upon a beach dedicated to the public, a mandatory injunction will not be issued to enforce its removal, on rule to show cause for a preliminary injunction to restrain its erection and maintenance.

13

INJUNCTION BILL.    The Rehoboth Beach Camp Meeting Association of the Methodist Episcopal Church was incorporated by special act of the Legislature of Delaware in 1873 and became the owner of a large tract of land along the Atlantic Ocean in Lewes and Rehoboth Hundred, and the land was plotted and laid out in building lots.    In the plot certain avenues, streets and highways were dedicated to the use of the public.    Among the avenues so dedicated was one known as Surf Avenue, which extends along the ocean front and parallel thereto, and Baltimore Avenue, which leads into Surf Avenue at right angles thereto, and the space between Surf Avenue and the ocean, it is claimed, was also dedicated to the public as a space that should be ever open and unobstructed to the view of the ocean by persons living on and using said avenues.    The bill alleged that the complainant was the owner of a lot at the corner of Surf Avenue and Baltimore Avenue, on which a dwelling house was erected in 1878, and since that time said house has been used as a residence during the summer months; that he was entitled to and possessed of an easement in the right to the free and unobstructed use of the whole of said avenues, as well as the right to an unobstructed view of the ocean from his dwelling house, and also to use all that portion of the shore between Surf Avenue and the ocean for the purposes to which it was dedicated.    The Commissioners of Rehoboth, one of the defendants, had control of and supervision over the said avenues, streets and highways, and in January, 1911, leased a part of Surf Avenue and the shore at the foot of Baltimore Avenue to Charles P. Hill for the purpose of erecting thereon bath houses.    The bill further alleged that under the terms of said lease the said Charles P. Hill was permitted to build a board fence, inclosing the bath houses on three sides, to such a height as to obstruct the complainant's view of the ocean and to prevent his use of the whole of Surf Avenue and the shore for the purposes for which they were dedicated.    At the time of the filing of the bill the bath houses and fence were being constructed under the direction of Edward Hill, an agent or servant of the said Charles P. Hill, and further work thereon was restrained and a rule issued requiring the said Commissioners of Rehoboth,

Charles P. Hill and Edward Hill to show cause why a preliminary injunction should not be granted restraining them from obstructing and interfering with the right of way, view and easement of the complainant. At the return of the rule the cause was heard on bill, affidavits and exhibits.

*Daniel O. Hastings,* for the complainant.

*Willard Saulsbury* and *Albert F. Polk,* for the defendants.

THE CHANCELLOR: The basis of the claim made by the complainant, Poole, is that there was a dedication to public uses, not only of Surf Avenue, but also the shore between that avenue and the Atlantic Ocean, "as a space that should be ever open and unobstructed to the view of the ocean by those persons living on and using said avenue." This dedication, it is claimed, was made by the making and recording of a plot of its land by the Rehoboth Camp Meeting Association of the Methodist Episcopal Church, a corporation created in 1873, and then the owner of a large tract of land along the ocean, which land it was organized to develop as a seaside summer resort. It was the act of plotting the land, laying out streets therein and selling parts thereof in building lots referring to the plot, and the contemporaneous declarations of persons representing the corporation, that constituted, as is urged, the dedication of the shore.

This is undoubtedly true of the streets as shown on the plot. *State v. Reybold,* 5 *Harr.* 484; *Fulton v. Dover,* 8 *Houst.* 78, 6 *Atl.* 633, 12 *Atl.* 394, 31 *Atl.* 974; *State v. Southard,* 6 *Penn.* 247, 66 *Atl.* 372. But it does not necessarily follow that because the Atlantic Ocean is shown on the plot, as it is, that there was therefore such a dedication of the shore as that there should be forever an open and unobstructed view of the ocean. No authority is shown for such a contention. It was not like cases where plots showed that spaces were designed as "park," "open square," "public ground," "commons" and the like. There were no such marks indicating on the plot any permanence of openings, or that the space would not be so built on

as to obstruct a full view of the ocean.   There was no covenant in the deed of the complainant's land to that effect, or which impliedly insured him that no structure would be built on the shore or east of Surf Avenue, or that his view of the ocean would not be obstructed.   The dedication stands on a grant, and the grant, if any be made, must have been made to the public, and not to any individual grantee, so far as appears in the evidence. Testimony was given by affidavits of several directors of the Association in office when the lots were first offered for sale, that lot owners in general and J. Morton Poole, the first owner of the lot of the complainant by deed from the Association, were told that the shore would not be built on but would always be an open space.   And proof was also offered that in 1878 when J. Morton Poole was about to build the house on the lot, he was again so assured by the then directors, or some of them, verbally.   These verbal declarations are urged as establishing the dedication in connection with the plot.

Three questions arise: (1) Are such contemporaneous verbal statements admissible in evidence?   (2) Are the particular declarations sufficient?   (3) Are they declarations of persons who were authorized to bind the corporation thereby? Verbal declarations of the dedicator, made contemporaneously with the dedication, are admissible in evidence to show the scope and purpose of the dedication.   Such declarations are against interest and are part of the *res gestae*.   *Ogle v. Phila., etc., R. R. Co.*, 3 *Houst.* 267, 272; *Village of Princeville v. Auten*, 77 *Ill.* 325; *Smith v. Flora*, 64 *Ill.* 93; *Columbus v. Dahn*, 36 *Ind.* 330; *Chicago v. Ward*, 169 *Ill.* 392, 48 *N. E.* 927, 38 *L. R. A.* 849; *Simmons v. Mumford*, 2 *R. I.* 172; *Atty. Gen. v. Abbott*, 154 *Mass.* 323, 28 *N. E.* 346, 13 *L. R. A.* 251.   Other cases might have been cited, but the principle is so frequently stated in text books, as well as by courts, that further citation need not be made.

In the case of *Ogle v. Phila., etc., R. R. Co.*, 3 *Houst.* 267, 272, it is said that a dedication may be made without any formality whatever, and may be with or without writing or any act of the owner as by plotting, etc.

"So the owner's acquiescence in the use of his land as a public high-

way, or his declared assent to such use, will be sufficient, the dedication being proved in most, if not in all cases, by matters *in pais*, as it is termed, and not by deed."

*Princeville v. Auten*, 77 *Ill.* 325, was a case where a block of ground was dedicated by original proprietors of the town as a "public square", and it remained for many years open and not built on. The town trustees contemplated erecting a town hall on the land. *Held*, that the express declaration made at the time of the grant or donation must control, and contemporaneous declarations and acts of donors and grantors was given in evidence, and from the evidence the Court found it to have been the intention of the proprietors that it should be an "open square" and so could not be used for a town hall, though walks, trees, etc., could be put there. In *Chicago v. Ward*, 169 *Ill.* 392, 48 *N. E.* 927, 38 *L. R. A.* 849, testimony of an employe of the seller of lots abutting on a park on the lake, that statements were made to purchasers of the lots to the effect that there would be no buildings to obstruct the view of the lake, was admitted in evidence to show dedication, and the scope thereof, and in that case the dedication was enforced by injunction in favor of an owner of land adjoining the park. In *Attorney General v. Abbott*, 154 *Mass.* 323, 28 *N. E.* 346, 13 *L. R. A.* 251, a question arose as to the dedication of a park at a seaside resort, and the Court gave emphasis to the testimony referring to the conduct of the directors of the company which promoted the development of the resort.

"Lots fronting upon parks, or having an unobstructed view of them, were deemed more attractive. Assurances were freely given by those having charge of the sale of the lots that these spaces or parks should always be kept open. Four of the original owners testify in distinct terms that it was the intention of those interested in the enterprise to make them open parks, free to the public forever."

The declarations were sufficient, with the plot, to establish a dedication. No doubt can reasonably arise but that if authorized the declarations were sufficiently specific to establish a distinct intention that the beach front should be kept open and the view unobstructed. They did not seem to exclude occupation of every part thereof by any structure for any purpose; but to exclude the erection of any structure which

would substantially interfere with or obstruct the view of the ocean.

"If it ever is consistent with public policy to have the individual appropriation of land thus restricted, there can be few objects which offer strong reason for encouraging the restriction as does that of keeping open the line of the shore and the view of the sea for all." Holmes, C. J., in *Attorney General v. Vineyard Grove Co.*, 181 *Mass.* 507, 64 *N. E.* 75.

The public takes from the dedicator nothing which he did not intend to give it, but if the intention to give be clear the public may hold all that is so given. No particular form or ceremony of dedication is necessary in dedications to public uses. *State v. Southard*, 6 *Penn.* 247, 66 *Atl.* 372. It is more difficult perhaps to prove a dedication of the kind in question, which is a passive one, than to prove a dedication to an active user; but there is certainly now before the Court strong evidence of dedication shown by contemporaneous declarations of the dedicator. Nor is there before the Court evidence of acts, of the dedicator inconsistent with the dedication claimed, sufficient to overcome the evidence above referred to. The erection and maintenance for fifteen or sixteen years of other bath houses by the defendant, Hill, at the same place does not have that effect, because they were not even built until twenty years after the dedication, and because it was shown that these old ones did not project above the bluff to such an extent as to obstruct the ocean view; and, besides, these old bathhouses may themselves have been unlawful, and did not remain there a length of time sufficient to establish any prescriptive right, even if such right could have been so acquired, which probably could not.

The declarations were seemingly made by persons and under circumstances which bound the company. *Hitchcock v. Oberlin*, 46 *Kan.* 90, 26 *Pac.* 466. It will be noted that the testimony given is that of directors of the company, and that they testify to representations made to purchasers in general and to J. Morton Poole in particular, and the assurances of continued openness of view actually influenced buyers of lots on Surf Avenue, and particularly J. Morton Poole, to give larger prices for them by reason of this attractive feature. Certainly

at this preliminary stage of the case it will not be held that the company was not bound by these declarations of the persons who naturally represent the company in making sales, even though no specific corporate action is shown in evidence. The specific promise made to Mr. Poole at a meeting of the directors just prior to the erection of his house in 1878 was not binding in itself; but it was sufficiently contemporaneous with the alleged dedication to be indicative of the real intention of the corporation to make the dedication claimed, and so to give authority to the representations theretofore made. It would seem that thereafter the corporation and all successors in title from it would be estopped to assert as against J. Morton Poole and his successors in title to his land, that the beach front had not, in fact, been dedicated to the public to be forever kept open and unobstructed as to the ocean view. *Simmons v. Mumford*, 2 *R. I.* 172. But it is not necessary to invoke the principle of estoppel in this connection.

It is a necessary element of dedication that there should be an acceptance of the property for the purpose. *Fulton v. Dover*, 8 *Houst.* 78, 6 *Atl.* 633, 12 *Atl.* 394, 31 *Atl.* 974. This acceptance may be actual or constructive. Where, as here, the acceptance imposes no active duties or does not involve assumption of responsibilities involving expense, and the dedication is clearly beneficial to the public, an acceptance will be presumed. Indeed, it would be nearly impossible to prove an actual acceptance by any one in this case, where the use was one involving simply a maintenance of the land dedicated in the same topographical condition as it was when dedicated, and where the dedicator was a corporation which afterwards became a municipality. The continued maintenance of the land as an open ocean front and user of it as such since 1873 is sufficient to show acceptance by the public of the dedication, so manifestly advantageous to the locality as a summer seaside resort. *Attorney General v. Abbott*, 154 *Mass.* 323, 28 *N. E.* 346, 13 *L. R. A.* 251; *Abbott v. Cottage City*, 143 *Mass.* 521, 10 *N. E.* 325. In the case of *Attorney General v. Abbott, supra,* the Court said:

"The acceptance of such a dedication at common law need not

appear of record, and need not be by the town. The acceptance is by the public at large, and the principal thing to show it is use by the public. * * * No assent of the town is necessary, because no burden is put upon the town, as in the case of a way. * * * If in a seaside summer resort no improvements at all are made, there will still be some benefit from having a space left for air, and for an open, unobstructed prospect. Whether the easement of a public park could be accepted merely by enjoying an unobstructed view over it of the ocean, need not be considered. Various other acts of use of all the parks are shown, sufficient to show an acceptance of them by the public. Such acceptance need not be very specific.''

Assuming, then, that the ocean front was dedicated to be open so that the view of the ocean be unobstructed, it is to be cons'dered whether the structure complained of is a real obstruction of the view. To the defendant, Hill, was leased by the town commissioners part of the beach strand at the foot of Baltimore Avenue for the erection of bathhouses and a pavilion. At this point the bluff above high-water mark is twelve feet high. The tight board fence is eight feet in height above the board walk, four feet above the edge of the bluff and extends eighty-two feet along the shore. The bathhouses are not extended higher than the fence. From the profile map it appears that the top of the screen is within a fraction of three feet above the level of the first floor of Poole's house, and is three and three-fourths feet above the apparent grade of the sidewalk of Baltimore Avenue, and nearly five feet above the level of the easterly end of Baltimore Avenue. No part of the structure or fence is immediately in front of Poole's house, and his view directly in front, i. e., looking at right angles to the shore, is entirely unobstructed. It is only the outlook to the north of the southerly line of Baltimore Avenue which is obstructed at all by the fence. In my opinion, this structure, as it now exists, is, as to Mr. Poole at least, such a substantial obstruction to his view as is prohibited by the dedication. His rights are to a full view and that no structure shall curtail it from any portion of his land. Not every structure would be so regarded, and, as at present advised, I think the dedication is limited to a prohibition as to obstruction of the view and not against the erection of any structure at all between

the bluff and the ocean and am not at this time disposed to hold that bathhouses and a fence which do not project above the bluff would be an encroachment on his rights.

Much stress was laid on the fact that the sea had encroached on the land dedicated and washed it away, and that the land east of Poole's land was all part of Surf Avenue, and therefore that the right to an unobstructed view had been lost. But I do not appreciate the force of this fact, or agree with the legal consequence claimed therefor. The owners of land fronting on Surf Avenue, and other buyers of land in Rehoboth, were assured that the shore of the ocean would not be so occupied as to obstruct the ocean view. The right to the view is equally protected, whether it be over Surf Avenue, or land to the East of it. Because land East of Surf Avenue has been washed away does not give any one a right to so build as to obstruct Poole's view of the ocean. Again, it is not a question as to the acquisition of an easement of view by prescription, because a dedication involves a grant, and the grant is not to Poole, but to the public use. *Attorney General v. Vineyard Grove Co.*, 181 *Mass.* 507, 64 *N. E.* 75.

It is urged that the structure is for public use, and was therefore within the general power of the commissioners to do acts suitable for the promotion of the success of the locality as a seaside resort. But, however advantageous it may be to the public, property dedicated to one purpose cannot be used for another public purpose. For this ample authority might be cited. It cannot be true, that for any public purpose the commissioners may so use the land in question as to interfere with the use to which it was dedicated, viz., to preserve an open ocean view. The question is not whether the structure is or is not a nuisance, but the question is, is it inconsistent with the dedication?

It is urged that the General Assembly has empowered the commissioners to interfere with the dedicated purpose of the land, the general language of the charter conferring on the municipality the regulation of the streets and the ocean strand, the prevention of encroachments thereon, and furnishing of proper provisions and attractions requisite for the success of

the town as a permanent seaside resort.   It is also pointed out
in the affidavits that there is no other public bathing place, and
that the lessee is bound to maintain a beach life guard and do
other things to accommodate the public.   But it is after all a
structure built for commercial purposes, to be patronized by
the public.   It is not essential to its success or usefulness that
it be located directly on the strand, or extended so far above
the bluff as to obstruct the view, for it appears that for six-
teen years other bathhouses were safely maintained at the
same place without obstructing the view.   Nor do I consider
that the commissioners had authority under section 9 of the
charter to give permission to the defendant, Hill, to erect the
structure in question.   For even assuming that the General
Assembly could itself authorize an obstructing structure with-
out compensation to adjoining owners, which is doubtful
according to some authorities (*Chicago v. Ward*, 169 *Ill.* 392, 48
*N. E.* 927, 38 *L. R. A.* 849), it did not give such power when it
authorized the town to grant franchises to erect wharves and
piers on the beach strand, for this is clearly not a wharf or pier.
With respect to apparently similar statutes, the Court in
*Attorney General v. Vineyard Grove Co., supra*, said:

"The statutes define the powers of the town within the limits of its
title, but do not confer a title.   They no more purport to renounce the rights
of the public than to exercise the power of eminent domain over private
rights."

The complainant was not precluded from maintaining his
bill because an indictment would also lie, or because the Court
upon conviction of an encroachment had power to order a re-
moval, or because the duty to prevent the encroachment was
primarily on the town.   *Wheeler v. Bedford*, 54 *Conn.* 244, 7
*Atl.* 22.

It was also urged that the complainant, Poole, had not
shown pecuniary damage and therefore was not entitled to have
the action to enjoin the further maintenance of the structure.
The text-book writers and courts have so frequently declared
that an owner of land abutting on or adjacent to land dedi-
cated for a public park may enjoin the use of it for other pur-
poses, and in general that one specially affected by an encroach-

ment on land dedicated for a special public purpose may enjoin the encroachment, that I do not at this time think it necessary to review the cases decided elsewhere. There is an injury, *i. e.*, a *damnum*, to Poole different from every other person by reason of the location of his house, and some evidence as to pecuniary damage. If there be a doubt as to his power to qualify as a proper complainant, the matter can be determined later, the defendants being in the meantime protected by an injunction bond if a preliminary injunction be given.

The case of *Bayard v. Bancroft*, 62 *Atl.* 6, in the Court of Chancery of this State, is cited by the defendants. In that case the complainant owned land abutting on the land dedicated to uses of a public park and sought to enjoin the use of a part of it by a trolley road passing through it. The relief was denied on two grounds. One was that it did not appear, as it was necessary that it should appear, that the complainant would receive some special damage that differed in kind from that received by the public at large, and such injury as would be of the tangible, practical kind that courts recognize as damage. Indeed, the Chancellor went so far as to say that, of all the many cases of similar applications which he examined, "it was proved to the satisfaction of the Court, or admitted, that the act enjoined amounted to the practical destruction of the park as a park and that in consequence of such diversion or destruction considerable pecuniary damage would result to the abutting owner bringing the suit by reason of the reduction in value of his abutting property." The other reason was that the allegation of the unsightliness of the railway, its poles and appurtenances, and the marring of a grassy knoll of great beauty through which it passed, related to the wounding of the artistic sensibilities of complainant, which did not warrant the use of the injunctive power of the Court. But it will be noted that that case is different from the one under consideration.

The injury to Poole is not to his artistic sensibilities, but a deprivation of his right to a user of land in accordance with the express purpose for which it was dedicated, viz:, to secure an open, unobstructed view of the ocean; and if that right is substantially interfered with, as it seems to me at this time that

it is, his right is as much destroyed as though the whole front were occupied by a solid built structure many feet in height. As to him the purpose of the dedication is destroyed. To the complainant, Poole, obstruction is destruction, the user being the right of view. Moreover the case is one where the injury to Poole would be recognized to be such by the average man, if there be allegations and evidence, as there was, that his residence will be rendered less desirable as such by reason of the structure cutting off his view. This itself seems to involve pecuniary damage, though there be, at this time, no proof of actual damage estimated in dollars and cents.

Where a corporation owning a large tract of land, intended as a seaside summer resort, and fronting on the ocean, divides the land into streets and building lots, duly records the plot thereof, sells lots to purchasers and others with the representation that the ocean front would not by so built on as to obstruct the view of the ocean, and such representations are so frequently made as to be generally recognized as an existing condition, and there appears on the plot a street parallel with the ocean and between the street and the ocean a strip of land unmarked in any way on the plot, there is a dedication of the street and strip of land to public user to be kept open so that the ocean view be and remain unobstructed; and an owner of a lot of land and dwelling house on the street, and facing towards the ocean, may maintain a bill to prevent an obstruction of the view by bathhouses and a screening tight board fence erected along the ocean front, though the structure is not immediately in front of his house. Such a right may be enforced against one who has a lease of the beach front for bathhouses from the municipality, which succeeded the original land company.

If a land company, organized to develop a seaside summer resort, dedicates a strip of land along the ocean front for public use to be kept open for the ocean view, and is succeeded by a municipality created by the Legislature, an owner of a lot fronting on the ocean may maintain a bill against the municipality, and a lessee from it, to prevent the lessee from building on the beach front a structure which would obstruct the

complainant's view of the ocean. As the corporation which sold the land could not have violated one of the chief attractive conditions of the locality, the ocean view, the municipality which succeeded it could not license one to do so; and the abutting owner had such a special interest in the condition peculiar to him as to entitle him to injunctive relief against the licensee without show ng great pecuniary damage, for the obstruction would be a destruction of the right which he had acquired.

It is true, of course, that at this time there can be no mandatory injunction requiring the defendants to remove the obstruction, as it has already been completed. For the same reason the defendants will not be injured by the continuance of the restraining order in the form of a preliminary injunction, with an injunction bond of sufficient size. I have stated my views fully on certain branches of the case and not on others, doing at this time no more than to show that as at present advised and on the facts before me, I am convinced that the complainant, Poole, should be awarded a preliminary injunction.

An order will be entered accordingly.

NOTE.—Subsequently, by agreement of the parties, a decree was entered making the injunction perpetual.