Ruff, Appellee, *v.* Brown et al., Appellants.

(No. 423—Decided May 4, 1953.)

*Mr. J. F. Cutright,* for appellants.
*Mr. Thomas A. Boulger* and *Mr. Robert L. Perdue,* for appellee.

COLLIER, J. The parties to this action will be referred to as the plaintiff and the defendants as they appeared in the trial court. The plaintiff instituted this action in the Common Pleas Court of Ross County, claiming to be the owner in fee simple of the land in question, and seeking to have her title quieted as against all adverse claims of the defendants and to have the defendants enjoined from interfering with plaintiff's rights or the rights of other lot owners in the use of the land.

The trial court found that the plaintiff was not the owner of the land, but did find that the two disputed tracts were dedicated as streets for the use of the public and enjoined the defendants from interfering in any manner with the use of the land as public streets. From this judgment, the defendants appealed to this court on questions of law

This controversy arose from the following factual situation: On March 11, 1924, George L. Brown owned five parcels of land, consisting of approximately 39 acres, in Scioto township, Ross county, Ohio, and on that date, he subdivided 4.4 acres into the George L. Brown subdivision. All statutory requirements were complied with, the plat of the subdivision was duly acknowledged by the subdivider, certified by the county auditor, and recorded in the Ross County plat records, volume 3, page 189.

The subdivided land fronted on the Cincinnati pike and included the entire frontage of the land owned by the subdivider. The remaining land in acreage owned by George L. Brown lay to the south and rear of the plat. The plat shows 17 lots numbered one to 17 inclusive from west to east along such highway, with an alley reserved in the rear of the lots and two irregular tracts or lots marked "reserved," one between lots 8 and 9, the other on the east end of the subdivision adjacent to lot number 17.

The plat contains this statement:

"Said plat sets forth in detail and describes with accuracy all lands laid out and here granted and dedicated by George L. Brown for streets for use of the public: also the lots intended for sale by numbers and the precise length and width of each and every lot thereon."

George L. Brown died in December 1927, and after the exchange of deeds between his widow, the defendant Maggie M. Brown, and his children and only heirs and their respective spouses, on October 25, 1928, the widow and heirs conveyed four of the five parcels of land to J. F. Alley and Hazel Alley (plaintiff), including parcel four, which is the George L. Brown subdivision. On January 26, 1929, J. F. Alley and his wife conveyed an undivided one-half interest in parcel four to C. C. Morgan, who later conveyed to Hazel Alley Ruff (plaintiff) and Harold Ruff, her husband. Harold Ruff died on February 8, 1948, intestate, and thus Hazel Alley Ruff, the plaintiff, acquired title to this land, and is an abutting owner of both tracts marked "reserved" on the plat and the subject of this lawsuit.

The defendant heirs of George L. Brown now claim, as such heirs, to be the owners of the tract marked "reserved" lying between lots eight and nine, and the defendants Frank M. and Lucille M. Nichols claim to be the owners of the other "reserved" tract on the east end of the plat by reason of a deed from said heirs of George L. Brown, dated October 22, 1948, conveying to them the eastern "reserved" tract adjacent to lot number 17. Since the date of this deed, the defendants Nichols have exercised dominion and control over this "reserved" tract by cultivating it, digging ditches, etc.

All the deeds of conveyance between the widow and

the heirs of George L. Brown and from them to the plaintiff, following the description of the lots, contain the statement, "and also all streets, avenues and alleys that are a part of said subdivision."

The issue is well defined by the pleadings, and the single question for determination in this cause is the ownership of the two tracts marked "reserved" on the plat of the subdivision.

The defendants in their assignments of error claim there was no dedication of the "reserved" tracts for street purposes; that the defendant widow and heirs of George L. Brown, as such widow and heirs, are the owners of the middle "reserved" tract; that the defendants Nichols are the owners of the other "reserved" tract as grantees of such widow and heirs; that the trial court erred in the admission and rejection of evidence; that the decision of the trial court is not sustained by and is against the manifest weight of the evidence; and that the trial court misinterpreted the meaning of the word, "reserved."

To determine whether the trial court erred in its conclusion that the disputed areas were dedicated streets of the subdivision, we must consider the plat, the deeds of conveyances, the evidence tending to show the intention of the subdivider, and the transaction as a whole. An examination of the plat, plaintiff's exhibit No. 3, a photographic copy thereof, shows that the alley in the rear of the lots, about which there is no dispute, is marked and described as "16′ alley *reserved.*" (Emphasis ours.) On the disputed tracts is simply the word "reserved." In the use of the same terminology, "reserved," did not the subdivider express the same intent and purpose? The plat contains also the statement, "all lands laid out and here granted and dedicated for streets for use of the public: also all lots intended for sale by numbers." This

statement on the plat clearly indicates there are streets in the subdivision, but if the "reserved" tracts which bear no number are eliminated, there are no streets. The subdivision extends the full distance along the highway from the west to the east boundary lines of the property. Had there been no streets intended for the subdivision, no such statement would have been inserted on the plat.

Another important fact is that when the 4.4 acres were laid out into lots the subdivider owned approximately 35 acres of land lying to the south and rear of the subdivision, most of which is now owned by the plaintiff. If the "reserved" tracts were not intended for streets, there is no other means of ingress to and egress from the remaining acreage in the rear. It is not probable that Brown would have sealed off his remaining land from access to the highway, but, on the contrary, it is probable that he intended the "reserved" tracts to be used as streets, not only for the lot owners and the public, but for his own use and purpose.

It should be observed also that the deeds above referred to, convey "all streets, avenues and alleys that are a part of said subdivision." The defendant heirs of George L. Brown are grantors or grantees in these instruments, and apparently by such statement, at the time the deeds were executed, recognized the existence of such streets.

Furthermore, the plaintiff testified that when she purchased the land from defendants, they told her the "reserved" tracts were for street purposes. The trial court may have relied upon this testimony, and a reviewing court, not being in as good position to judge the credibility of the witnesses as the trial court, may not substitute its judgment for that of the trial court.

The defendants lay great stress upon the literal

meaning of the word, "reserved." Courts no longer adhere to the technical or literal meaning of particular words in a deed or contract, but gather the intention of the parties from the whole instrument. *Long* v. *Fewer,* 53 Minn., 156, 54 N. W., 1071. The word, "reserved," literally means, "to retain," "to hold back," "to except." However, had Mr. Brown intended to except or retain the areas in dispute for his individual use, the most natural thing for him to have done would have been to so indicate on the plat, and not use the same word, "reserved," as he employed to describe the undisputed alley.

Another fact shown by the evidence throws some light on the question of the intention of all concerned in the use of the word, "reserved." From the date of the certification of this plat by the county auditor, March 11, 1924, until October 1948, the "reserved" tracts were omitted from the tax duplicate, and only the numbered lots were listed thereon. Had the subdivider intended to except or retain title to these areas, doubtless they would have been carried on the tax duplicate.

The defendants contend that the statements of the subdivider when the lots were laid out, as testified to by the witness Stanhope, were improperly received in evidence.

One answer of this witness shows the nature of his testimony:

"A. After he explained about my land he said he was willing to lay it out in lots, and down at the east end of the land they would put—run a roadway, and also one about the center of the land."

This testimony is clearly admissible under the following authorities: 26 Corpus Juris Secundum, 119; *Davis* v. *Epstein,* 77 Ark., 221, 92 S. W., 19; *Poole* v. *Commrs. of Rehoboth,* 9 Del. Ch., 192, 80 A., 683.

Quoting from 26 Corpus Juris Secundum, 119, "Besides being admissible as a part of the *res gestae*, these declarations are admissible as declarations against interest."

See, also, 17 Ohio Jurisprudence, 332, Section 264, on the subject of Evidence:

"It may be stated as a broad general rule that declarations against interests, relating to title to or ownership or possession of real property, made by a former owner thereof before he parted with title, which would have been admissible against the declarant, are admissible against subsequent grantees or vendees, or those in privy with such former owner—his heirs—in favor of anyone whomsoever."

Also, it is held in *Tipton's Lessee* v. *Ross*, 10 Ohio, 273: "The title of the owner of property is bound by his admissions. While one holds title, admissions he makes may be given in evidence against him and against his privy."

All the defendants as heirs and subsequent grantees and successors in title of George L. Brown are in privy with him and are bound by his declarations relinquishing title to the disputed tracts.

Did the trial court err in rejecting the testimony of the witness, Florence Schiff, as contended by the defendants? This witness is the daughter of the subdivider and one of the defendants. She was asked these questions: "Why did he mark these lots 'reserved'? Did your father have any particular purpose in mind when he marked those lots 'reserved'? What was that purpose?" Objections to these questions were either sustained or the answers excluded, and properly so for two reasons: In the first place the witness was not asked to repeat what her father said, but for her own opinion as to his intention and purpose. Secondly, such answer by a party to the

action is a self-serving declaration and for that reason not admissible. See 17 Ohio Jurisprudence, Evidence, Section 237.

The plat itself, together with the fact that all statutory requirements were complied with, is sufficient to establish a statutory dedication. However, if for any reason a statutory dedication has not been shown, the intention of the subdivider to lay out the "reserved" tracts as public streets has clearly been shown both by his own declarations and by facts and circumstances which positively imply such intention. Furthermore, giving full weight to plaintiff's testimony as to the representations made to her by the defendant heirs of George L. Brown when she purchased the land from them concerning the "reserved" tracts, and this is for the trial court to determine, such agreement may be enforced in equity. *Seegar* v. *Harrison,* 25 Ohio St., 14. The judgment of the trial court is well supported and sustained by the evidence, and, since we find no substantial error in the trial of the case, the judgment is affirmed.

*Judgment affirmed.*

GILLEN, P. J., and McCURDY, J., concur.