LEE R. HART, LAWRENCE M. HIMES and DOROTHY M. HIMES,
Defendants Below, Appellants,

*vs.*

JOSEPH S. DURR,
Plaintiff Below, Appellee.

JOSEPH S. DURR,
Plaintiff Below, Cross-Appellant,

*vs.*

LEE R. HART, LAWRENCE M. HIMES and DOROTHY M. HIMES,
Defendants
Below, Cross-Appellees.

*Supreme Court on Appeal, October 14, 1959.*

*J. D. Winslow,* Wilmington, for appellants and cross-appellees.

*Elwood F. Melson, Jr.,* Wilmington, for appellee and cross-appellant.

SOUTHERLAND, C. J., and WOLCOTT and BRAMHALL, JJ., sitting.

WOLCOTT, Justice: These are cross-appeals from a judgment of the Court of Chancery. Both appeals involve the existence or non-existence of a public street in a development known as DuRoss Heights. To understand the contentions, it is necessary to state the facts.

In 1937 the owners of the land in question caused surveyors to prepare a development plat which, after having been approved by the necessary county authorities, was recorded. Thereafter, the tract of land became the suburban development known as DuRoss Heights, which lies on the west side of Airport Road, formerly known as Hog Swamp Road. The plat of DuRoss Heights shows streets running parallel to Airport Road and ending at the easterly boundary of DuRoss Heights. The parallel streets in the eastern portion of the development with which we are concerned are, first, Strawbridge Avenue and, second, King Avenue.

Shown also on the plat as running along the eastern boundary of DuRoss Heights at an angle to Airport Road is a 30-foot wide strip labeled "reservation." The plat shows Strawbridge Avenue and King Avenue terminating in this strip with similar curved intersections to the intersections of those avenues with the streets of DuRoss Heights.

The defendants who own different lots lying between Airport Road and Strawbridge Avenue, and between Strawbridge Avenue

and King Avenue abutting on the 30-foot wide strip labeled "reservation" obtained quitclaim deeds from the owners of the fee in the strip labeled "reservation." They then erected obstructions in said strip, thus barring the public from its use.

The plaintiff who owns a lot facing on Strawbridge Avenue but not adjacent to the 30-foot wide strip brought suit in his behalf and in behalf of all similarly situated lot owners to compel the removal of the obstructions.

The Chancellor directed the removal of the obstructions on the 30-foot wide strip in the portion between Airport Road and Strawbridge Avenue, but refused to compel the removal of the obstructions between Strawbridge Avenue and King Avenue.

From the judgment thus entered the defendants appealed from that portion requiring the removal of the obstructions between Airport Road and Strawbridge Avenue. The plaintiff cross-appealed from that portion of the judgment refusing to compel the removal of the obstructions between Strawbridge Avenue and King Avenue.

The first argument made by plaintiff is that the recording of the development plat of DuRoss Heights under 9 Del.C. § 2510 amounted to a dedication of the 30-foot wide strip labeled "reservation" as a public street or road, and that, consequently, at the suit of a member of the public, obstructions placed in that public way must be removed.

The cited code section provides that the approval of a development plat by the Regional Planning Commission of New Castle County and the Levy Court of New Castle County which is thereafter recorded shall be an acceptance by the public authorities of the "intended dedication of the roads appearing thereon." We think the meaning of the statute is that the intent to dedicate must appear clearly on the recorded plat for a statutory dedication of land to public use to result.

On this plat the strip in question is labeled "reservation," which appears to us to negate an intent on the part of the owners to dedicate the strip to public use. This is made clear, we think, by the certification of the owners appearing on the recorded plat to the effect

"that such streets, lanes and avenues as are hereon shown are dedicated." It seems obvious to us that the labeling of an apparent lane or street with the term "reservation" can be indicative only of the owners' intent to take from the general dedication of streets the portion so reserved. What other purpose could the label be intended to accomplish? See *City of Eugene v. Lowell, 72 Or. 237, 143 P. 903* for the effect of the label "reserved" in a plat as making an exception to a general dedication of land for public use.

This was the finding of the Chancellor who also found that there was no contemporaneous evidence sufficiently strong to alter the conclusion that the owners intended to reserve from public use the portion of the plat marked "reservation."

Some support for this conclusion is found in *Poole v. Com'rs of Rehoboth, 9 Del.Ch. 192, 80 A. 683*, where the Chancellor was called upon to construe the effect of the recording of a development plat. He held in that case that unmarked portions of the land—viz., beach frontage along the Atlantic Ocean—could not be held to have been dedicated when those portions were in fact unlabeled on the plat. See, also, *Earle v. McCarty, Fla., 70 So.2d* 314 and *City of Brownsville v. West, Tex.Civ.App., 149 S.W.2d* 1034.

Plaintiff cites in opposition to this construction of the plat *Mueller v. City of Seattle, 167 Wash. 67, 8 P.2d 994* and *Gaspard v. Edwin M. LeBaron, Inc., 107 Cal.App.2d 356, 237 P.2d 278.* In both of those cases, however, the particular land held to be dedicated was in width and length suitable only for use as a street or way. The strips under consideration, however, were in both cases unlabeled. We think, therefore, the cases are distinguishable upon this ground. The plat of DuRoss Heights specifically calls attention to the fact that the strip of land in question was reserved for some purpose and, having been reserved, we are of the opinion that it was not therefore dedicated.

This ruling disposes of the appeal taken by the plaintiff who concedes that the evidence is sufficient to support the holding of the Chancellor that a common law dedication of the land lying between Strawbridge and King Avenues had not taken place.

The appeal of the defendants, however, requires us to review the Chancellor's ruling that there was in fact a common law dedication of that portion of the strip in question lying between Airport Road and Strawbridge Avenue.

■ It has been held in this state that twenty years adverse user of land by the public as a road or street will constitute evidence of the dedication of the land by the owner to public use. *State v. Brown,* 6 *Boyce* 179, 97 *A.* 590. The proof, however, does not establish twenty years adverse user by the public. Absent such proof to establish dedication of the land, it must be shown that the land in question was used as a public way for a lesser time but with the owners' consent. *State v. Reybold,* 5 *Har.* 484; *Johnson v. Stayton,* 5 *Har.* 448; *Fulton v. Town of Dover,* 8 *Houst.* 78, 6 *A.* 633, 12 *A.* 394, 31 *A.* 974; and see 4 *Tiffany, Real Property (3d Ed.)* § 1102.

■ The Chancellor found the facts bearing upon this issue adversely to the contention of the defendants. It would serve little purpose to catalog the various circumstances offered for his consideration. It will suffice to say that we have reviewed them and are satisfied that his finding of use by the public of the portion of the reserved section lying between Airport Road and Strawbridge Avenue is supported in the record. It is also our opinion, after reviewing the facts, that that use by the public was made with the consent of the owners, and that, therefore, a dedication to the extent stated has taken place.

For the foregoing reasons the judgment of the Chancellor is affirmed.